INSURANCE & PREPAID BENEFITS
TRUSTS, et al., Plaintiffs,

v.

Ray MARSHALL, Secretary of United
States Department of Labor,
Defendant.

No. CV 79–3029–RMT.

United States District Court,
C. D. California,
Civil Division.

July 21, 1981.

George L. Rogers, George L. Rogers, A Law Corp., Huntington Beach, Cal., and David Daar, Clause J. Dorais, Henry A. Knebel, Miller & Daar, A Professional Law Corp., Beverly Hills, Cal., for plaintiffs.

T. Timothy Ryan, Jr., Monica Gallagher, Robert N. Eccles, Norman P. Goldberg, Washington, D. C., Willie M. Alexander, and Daniel Teehan, Regional Sol., San Francisco, Cal., and Andrea S. Ordin, U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM

TAKASUGI, District Judge.

This matter having come before this court for trial on January 28, 1981 through January 30, 1981, and thereupon having been submitted, this court now issues this Memorandum in lieu of findings of fact and conclusions of law pursuant to Rule 55 of the Federal Rules of Civil Procedure.

## BACKGROUND

In November 1975, plaintiff Insurance and Prepaid Benefits Trust ("IBT") was formed by Mr. Thomas Wilkie with Mr. Wilkie as trustee. IBT was formed pursuant to state law which required such a trust to be formed as a condition to the issuance of a group insurance policy. Said group insurance policy was sold by Insurance Benefits, Inc. ("IBI"), a company wholly owned by Mr. Wilkie.

In 1977, the 1975 trust document was redrafted, resulting in the division of the single trust into five successor trusts established by five separate trust agreements.[1] Collectively, the five successor trusts are referred to as IBT. The new trust documents provide for a Benefit Committee to serve as trustees and supervise the operation of IBT.[2] By contract between IBT and IBI, IBI was retained as the contract administrator of IBT.

## ISSUES

The sole issue before this court was whether IBT, as of July 23, 1979, fell within the coverage of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

### 29 U.S.C. § 1002

29 U.S.C. § 1002(3) provides that an employee benefit plan covered by ERISA includes either an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1) or an employee pension benefit plan as defined by 29 U.S.C. § 1002(2).[3] Because the parties

---

1. The five successor trusts are (1) Insurance and Prepaid Benefits Trust—Manufacturing Industry and Related Services and Suppliers; (2) Insurance and Prepaid Benefits Trust—Wholesale-Retail Industry and Related Services and Suppliers; (3) Insurance and Prepaid Benefits Trust—Distribution Industry and Related Services and Suppliers; (4) Insurance and Prepaid Benefits Trust—Construction Industry and Related Services and Suppliers; and (5) Insurance and Prepaid Benefits Trust—Services Industry and Related Services and Suppliers. The language and terms of each of the trust documents are identical, except for the names.

2. Each of the five trust documents provides for a Benefit Committee and for the members of the Committee to serve as fiduciaries.

3. 29 U.S.C. § 1002(1) provides as follows:
   The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
   29 U.S.C. § 1002(2) provides as follows:
   The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

have stipulated that IBT does not constitute an employee pension benefit plan, IBT falls within the coverage of ERISA only if it constitutes an employee welfare benefit plan pursuant to § 1002(1).

The parties have stipulated that the types of benefits offered by and through IBT are the types of benefits referred to by § 1002(1). The parties have also stipulated that IBT is not an "employee organization" for purposes of § 1002(1).

Therefore, whether IBT was an ERISA plan on July 23, 1979 rests upon whether or not IBT was ". . . established or maintained by an employer . . . for its participants or beneficiaries." 29 U.S.C. § 1002(1).

## I

### "ESTABLISHED OR MAINTAINED"

■ Plaintiff contends that the "maintained" language permits a plan not initially intended to be or not established as an ERISA plan to be transformed into an ERISA plan. Under plaintiff's view, a non-ERISA plan established by an insurance company could be turned over to employers to be "maintained" as an ERISA plan. In the absence of clear case, statutory, or legislative authority to the contrary, this court finds plaintiff's interpretation of "maintain" to be consistent with the statutory language of 29 U.S.C. § 1002(1). A plan, although not originally established as an ERISA plan, may be entitled to ERISA status if it is subsequently restructured as an ERISA plan which complies with the requirements of 29 U.S.C. § 1002(1).

## II

### "BY AN EMPLOYER"

29 U.S.C. § 1002(5) defines an employer as follows:

"Any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee ben-

(A) provides retirement income to employees, or

(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, re-

efit plan; and includes *a group or association of employers acting for an employer in such capacity.*" (Emphasis added.)

Defendant contends that there was no identifiable "group or association of employers" which acted for its member employers and, therefore, IBT was not "established or maintained by an employer." Defendant's contention is apparently based upon the judicial and legislative rejection of multiple employer trusts ("METs") as ERISA plans.

METs are entities utilized by insurance companies to sell group insurance coverage to unrelated groups, i. e., as an insurance funding vehicle. METs are usually characterized by the following: Employers have no business or social connections with one another; employers are actively solicited by the insurer; the plan is promoted by the insurer; it is a profit-generating enterprise; and, what this court considers to be most important, all decisions regarding the trust are made by the insurer, i. e., the participating employers possess no *actual* decision-making powers.

The courts have refused to view these METs as being "maintained by an 'association or group of employers acting for an employer.'" The courts and Congress have characterized these METs as mere insurance vehicles established, maintained, and controlled by private insurance companies for the purpose of marketing insurance. *Hamberlin v. VIP Insurance Trust*, 434 F.Supp. 1196 (D.Ariz.1977); *The Activity Report of the House Committee on Education and Labor*, House Report No. 94–1785, January 3, 1977. *See also Bell v. ESBA*, 437 F.Supp. 382 (D.Kan.1977); *NBC–EBA v. Anderson*, 451 F.Supp. 458 (S.D.Iowa 1977).

Resolving whether IBT, like a MET, was merely a vehicle to promote and sell insurance, or whether, instead, it was an ERISA

gardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

trust requires the following factual determinations: a) whether there existed an association of employers; b) whether the Benefit Committee of IBT was representative of the participating employers; and c) whether the Benefit Committee was the true decision-making body for IBT, independent of and distinct from IBI.

## A.

### ASSOCIATION OF EMPLOYERS

■ This court finds that there was an "association of employers" for purposes of ERISA. All participating employers had knowledge of the 1977 restructuring of IBT (i. e., its transformation into an ERISA plan) and voluntarily chose to participate in the new trust intending to provide employee benefits. Therefore, these participating employers formed an "association" of employers insofar as they had joined together for a specific purpose.

## B.

### BENEFIT COMMITTEE REPRESENTATIVE OF EMPLOYERS

Additionally, this court finds that the participating employers were informed of the formation of the Benefit Committee and were invited to participate in the operation of the Committee and, therefore, also finds that the participating employers either explicitly or implicitly approved of the selection of the members of the Benefit Committee. Hence, the Benefit Committee was representative of the participating employers of IBT.

## C.

### DECISION–MAKING BODY FOR IBT

However, this court is unable to conclude that the power to make final decisions in IBT matters rested with the Benefit Committee. On the basis of the evidence introduced, including evidence of the Benefit Committee's exercise of control over IBT affairs and the powers delegated to the Committee by the IBT trust documents, this court is inclined to conclude that the Benefit Committee controlled the affairs of IBT and was free from undue influence or control by IBI. But, Clause 10 in the IBT–IBI "Agreement for Services"[4] compels this court to find that the power to decide IBT matters may well have rested with IBI. Regardless of the validity or scope of Clause 10, it places IBT in a highly disadvantageous position in its relationship with IBI. Although IBI, seemingly, had never utilized this clause for the purpose of influencing or controlling the decisions of the Benefit Committee or the affairs of IBT, the potential existed. It is this potential which the court finds troublesome and which prevents this court from concluding that IBT was controlled by the Benefit Committee and not by IBI.

Additionally, this court is troubled by the fact that as of July 23, 1979, the date in question, Mr. Wilkie was chairperson of the

---

**4.** Clause 10 of the IBT–IBI "Agreement For Services" provides that:

Trade Secrets

10. Organization [IBI] has made a substantial investment and will continue to invest monies to develop and promote Organization's data processing procedures, accounts, records and client information base. During the term of this Agreement, Trust [IBT] will become acquainted with various trade secrets, consisting of compilations of systems, accounts, records, and client information, which are owned by the Organization and which will be regularly used in the operation of the business of the Trust with respect to actual or prospective clients whose identities are not generally known to the public, and specifically not known by competitors and other persons in the same business as Organization. The Trust shall not disclose any of the aforesaid trade secrets, directly or indirectly, or use them in any way, either during the term of this Agreement or at any time thereafter. All files, records of accounts of clients, actual and prospective, documents, equipment data processing systems, disks and tapes, agents lists, and any other records and books relating in any manner whatsoever to the participating employers of the Trust, whether prepared by the Organization or otherwise coming into its possession, shall remain the exclusive property of the Organization regardless of who actually prepared or purchased the item.

Benefit Committee.[5] Although this fact alone is not dispositive of who controlled IBT as of July 23, 1979, Mr. Wilkie's dual role, as a trustee of IBT and as the owner of the contract administrator IBI, reinforces the possibility that IBI was, in fact, in control of IBT.

Although there existed an association of employers of which the Benefit Committee of IBT was representative, because actual control of the trust could have rested with IBI, this court must conclude that IBT was not a plan "established or maintained *by an employer.*"

### III

### "FOR ITS PARTICIPANTS"

29 U.S.C. § 1002(7) defines a participant as "any employee or former employee of an employer." Employee is defined by 29 U.S.C. § 1002(6) as "any individual employed by an employer."

■ This court feels that the mere inclusion of individuals who are not eligible for participation in an ERISA plan does not invalidate, as a whole, a plan which otherwise complies with the requirements of ERISA. In such a situation, this court feels that all that would be required is the invalidation of the plan as it pertains to those ineligible participants. However, such an analysis is inapplicable to the instant matter. This court is not confronted with merely the inclusion of ineligible partici-

pants, but with an overexpansiveness of terms contained in the trust documents themselves.

■ This court finds that the definitions of "employee" and "participating employer" contained in the IBT trust documents were too expansive in their scope, specifically and clearly allowing persons ineligible to participate in an ERISA plan to participate in IBT.[6] Although there is evidence that prior to and as of July 23, 1979, contrary to the trust definitions, only persons eligible to participate in an ERISA plan were permitted to become participants of IBT, the wording of the trust documents as of July 23, 1979 did not preclude the future admission and inclusion of ineligible participants.

Because the terms "employee" and "participating employer" as defined by the IBT trust documents were overexpansive in their scope, this court concludes that IBT was not established or maintained "for its participants or beneficiaries."

### CONCLUSION

This court finds that as of July 23, 1979 IBT was not "established or maintained by an employer . . . for its participants or beneficiaries" as required by 29 U.S.C. § 1002(1) and, therefore, was not an employee benefit plan falling within the scope of ERISA.

---

5. Mr. Wilkie resigned from the Benefit Committee on August 15, 1979.

6. "Employee" and "participating employer" are defined in the IBT trust documents as follows:
   "*Participating Employer*"—Any individual; employer, whether a corporation, partnership, or sole proprietorship; an association of employers; and association of employees; another trust fund established to provide benefits similar to those of this trust; or otherwise, doing business or organized within the Manufacturing Industry and Related Services and Suppliers, which satisfied such requirements for participation as may be established by the Benefit Committee and which adopts, in writing, this Agreement and agrees to be bound by the terms and conditions thereof as the same may from time to time be amended and modified.

"*Employee*"—Those persons in the service of a participating Employer, including in the case of a sole proprietorship or partnership the sole proprietor or the partners, to the extent provided for by the Benefit Committee. "Employee" shall include members of an employee association or a person in the service of a member of an employer association accepted as a Participating Employer by the Benefit Committee and shall include individuals covered by the previous Trust Agreement or any individuals who become members of or employed by associations or employers which were covered under the preceding Trust or individuals who terminate employment but request conversion or continuation of coverage.