NATIONAL BUSINESS ASSOCIATION TRUST, By and Through its duly authorized representative, NATIONAL BENEFIT ADMINISTRATORS, INC., Plaintiff,

and

National Benefit Administrators, Inc., Intervening Plaintiff,

v.

Leroy MORGAN, Commissioner of the Commonwealth of Kentucky Department of Insurance, and Elizabeth P. Wright, Commissioner of the Commonwealth of Kentucky Department of Insurance, Defendants and Intervening Defendants.

Civ. A. No. C89–0917–L(J).

United States District Court, W.D. Kentucky, Louisville Division.

Feb. 15, 1991.

See also 770 F.Supp. 1168.

Scott T. Wendelsdorf, Patricia B. Van-Cleave, Ogden, Sturgill & Welch, Mark A. Smedal, Louisville, Ky., for plaintiffs.

Patrick Watts, Suetta W. Dickinson, Ky. Dept. of Ins., Frankfort, Ky., for Leroy Morgan.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This federal question dispute is before the court on cross motions for summary judgment pursuant to FED.R.CIV.P. 56. The dispositive issue raised in these motions is whether and to what extent the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* prevents the Commissioner of the Kentucky Department of Insurance ("Commissioner")[1] from exercising jurisdiction over the activities of National Business Association Trust ("NBAT"), a multiple employer welfare arrangement, and its plan supervisor National Benefit Administrators ("NBA"). Finding that ERISA does not prohibit a state insurance commissioner from regulating NBAT and NBA through its insurance laws to the extent such laws are not inconsistent with ERISA, defendants' motion for summary judgment is granted and NBAT's cross-motion is denied.

## I. BACKGROUND

### A. HISTORY OF NBAT

Plaintiff, NBAT, is the successor to an entity established in 1975 by three employers in the bottling and canning industries known as the Retailers of Mid–America Canning Corporation Insurance Trust Fund ("Trust Fund"). The Trust Fund was established for the purpose of making "application to an insurance company ... for the issuance of a policy or policies of ... life, health, accident, and disability insurance or hospital or medical service plans, to be issued to the Trustee, providing benefits for employees of [participating] Employers...."

In 1982, the documents creating and defining the Trust Fund were amended in order to enable the Fund to self insure the health benefits provided through the cre-

---

**1.** This action was originally filed against Leroy Morgan in his capacity as Commissioner of the Kentucky Department of Insurance. Since the filing of the original complaint, Mr. Morgan resigned from this position and defendant Elizabeth Wright was appointed Commissioner of the Kentucky Department of Insurance.

ation of reserves from which benefits could be dispersed to employees or providers for covered expenses. Through this amendment, the name of the Trust Fund was changed to Mid–America Soft Drink Bottling Trust ("Mid–Am"), and the trust documents provided that "[a]ll assets of the Plan are trust property and shall be held in trust by one or more trustees," to be used to pay benefits to employees of the participating employer groups or to purchase insurance to provide such benefits.

In 1987, Mid–Am entered into a Trust Agreement which resulted in the creation of plaintiff NBAT. This Trust Agreement stated that Mid–Am, through its participation in NBAT, desired to "fund benefits provided for in [certain health benefit plans] for employees and their dependents, by self-funded means consistent with 29 U.S.C. § 1002(40)(A) and thereby create a Multiple Employer Welfare Arrangement ("MEWA")."[2] Participating employers were required to make monthly contributions to NBAT in order to create the fund from which benefits to their employees would be paid.

Approximately one week following its creation, NBAT entered into a contract entitled "Agreement for Plan Supervisor" with intervening plaintiff, National Benefit Administrators, Inc. ("NBA") pursuant to which NBA became the administrator/plan supervisor for NBAT. *see* 29 U.S.C. § 1002(16). Under the terms of this agreement, NBA obtained unlimited authority to market and administer NBAT and gained complete control over NBAT funds and claims processing. In addition, NBA retained the sole and exclusive authority to determine the level of contributions to be made by plan participants. In exchange for these services, NBA received a percentage of total contributions paid to NBAT by plan participants.

During the period of August, 1987 through March, 1990, NBAT, apparently through the efforts of NBA, expanded its "employer group/plan participant" market substantially. Unfortunately, this expansion in market size did not enhance NBAT's financial stability. By May, 1990, less than three years following the creation of NBAT, NBA resigned from its administrator/plan supervisor contract and NBAT ceased doing business with approximately 4.6 million dollars in outstanding benefit claims and $700,000.00 in assets. Purportedly, during the 32 month period in which it served as administrator/plan supervisor for NBAT, NBA received over 17 million dollars in fees.

## B. FEDERAL DECLARATORY JUDGMENT ACTION

Beginning in 1989, the Commissioner, in response to a consumer complaint, began an investigation of NBAT. In an apparent attempt to determine the extent of her authority in this regard, the Commissioner requested that NBAT provide her with documentation supporting the contention that NBAT was an ERISA welfare benefit plan operating under the jurisdiction of the United States Department of Labor and further requested that NBAT provide documentation concerning the scope and extent of its operations. These requests were initially made informally followed by the issuance of a subpoena.

In response to this investigation, NBAT filed a complaint in this Court seeking declaratory and injunctive relief prohibiting the Commissioner from investigating, examining, inquiring, regulating or otherwise interfering with its activities. In support of the relief sought, NBAT argued that, as an ERISA employee benefit plan, the Commissioner has no jurisdiction over it inasmuch as any attempt by the Commissioner to regulate or investigate its business activities under state law is prohibited by 29 U.S.C. § 1144(a). The Commissioner re-

---

**2.** 29 U.S.C. § 1002(40)(A) defines a "multiple employer welfare arrangement" as:

an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) [defining welfare benefit plans under ERISA] to the employees of two or more employers ... or to their beneficiaries [excluding rural electric cooperatives and collective bargaining agreements].

sponded by filing a motion for summary judgment contesting the preemptive effect of 29 U.S.C. § 1144(a) and asserting that NBAT was merely seeking to assert a federal preemption defense to threatened state action.

By agreement of the parties, consideration of the Commissioner's motion for summary judgment was held in abeyance. Upon reinstatement of this matter to the Court's active docket in July, 1990, NBAT had ceased doing business in the Commonwealth and the Commissioner had instituted proceedings in state court in an attempt not only to regulate but also to liquidate NBAT under state law. As a result, the argument raised in the Commissioner's original motion for summary judgment— that NBAT was merely asserting a federal ERISA defense to *threatened* state action—was rendered moot.

The Commissioner has since filed a supplemental memorandum in support of her motion for summary judgment. NBAT has responded to this motion and filed a cross-motion for summary judgment in which intervening plaintiff NBA joins. Theses motions are now before the court for consideration.

## II. PERTINENT STATUTES

### A. FEDERAL STATUTES

The parties concede that the activities of NBAT fall within the scope of or, at a minimum, are in some fashion related to the provisions of ERISA, 29 U.S.C. § 1001 *et seq.* For purposes of the summary judgment motions pending before the court, the substantive provisions of ERISA are for the most part irrelevant. The only provisions of ERISA which are relevant to the issues before the court are 29 U.S.C. § 1002 (the ERISA definitional statute) and 29 U.S.C. § 1144 (the ERISA preemption statute).

29 U.S.C. § 1002(1) defines the type of benefit plans subject to and governed by ERISA. In so doing, the statute defines the terms "employee welfare benefit plan" and "welfare plan" as:

[A]ny plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical or hospital benefits.... (*emphasis added*).

Title I of ERISA applies to any "employee benefit plan" established or maintained by an employer engaged in commerce or by an employee organization or both. 29 U.S.C. § 1003(a).

Not only does ERISA apply to any "employee benefit plan" as defined above, ERISA preempts the application of state law to any employee benefit plan in most instances. Specifically, 29 U.S.C. § 1144(a) provides:

(a) **Supersedure; effective date.** Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [29 U.S.C. 1003(a) ] and not exempt under [29 U.S.C. 1003(b) ]....

Subsection (b) of 29 U.S.C. § 1144 contains an exclusion from the preemptive reach of subsection (a) commonly referred to as the "savings clause." This provision and the accompanying "deemer clause" which qualifies it provide:

(2)(A) Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts,

banks, trust companies, or investment companies.

■ In short, ERISA will preempt any state law which relates to an ERISA "employee benefit plan" other than those laws which regulate insurance, banking or securities. A state may not, however, regulate an employee benefit plan or trust subject to ERISA under its insurance, banking and securities laws simply by deeming or unilaterally determining that such a plan or trust is engaged in the business of insurance, banking or investments.

In addition to the "savings clause" exception to federal preemption, 29 U.S.C. § 1144(b)(6) modifies the preemptive effect of 29 U.S.C. § 1144(a) in the context of state regulation of MEWA's such as NBAT. Section (b)(6) provides:

(A) Notwithstanding any other provision of this section—

(i) in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides—

(I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and

(II) provisions to enforce such standards, and

(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this title, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this title.

B. STATE STATUTES

The parties focus their respective arguments on KRS 304.11-045, entitled "Jurisdiction over Providers of Health Care Benefits." This section of the Kentucky insurance code provides:

(1) The purpose of this section is to give Kentucky Jurisdiction over providers of health care benefits; to indicate how each provider of health care benefits may show under what Jurisdiction it falls; to allow for examination by Kentucky if the provider is unable to show it is subject to another Jurisdiction; to make such a provider of health care benefits subject to the laws of Kentucky if it cannot show that it is subject to another Jurisdiction; and to disclose to purchasers of such health care benefits whether or not the plans are fully insured.

(2) Notwithstanding any other provision of law, and except as provided herein, any person or other entity which provides coverage in this state for medical, surgical, chiropractic, physical therapy, speech pathology, audiology, professional mental health, dental, hospital, or optometric expenses, whether such coverage is by direct payment, reimbursement, or otherwise, shall be presumed to be subject to the Jurisdiction of the department, unless the person or other entity shows that while providing such services it is subject to the Jurisdiction of another agency of this state, any subdivision thereof, or the federal government.

(3) If a person or entity wishes to show that it is subject to the Jurisdiction of another agency of this state, any subdivision thereof, or the federal government, such showing shall be made by providing to the commissioner the appropriate certificate, license, or other document issued by other governmental agency which permits or qualifies it to provide services.

The Commissioner has not directed the court to any specific substantive or regulatory provision of the Kentucky Revised Statutes which she is attempting to enforce against NBAT and NBA or which she asserts is not preempted by ERISA. Further, although KRS 304.11-045 appears to grant the Commissioner jurisdiction over certain entities it does not contain any specific standards or procedures which the

court can review for purposes of determining whether conflicts with the provisions of title I of ERISA arise.

## III. ARGUMENTS AND ISSUES

While conceding that it is a MEWA subject to the limitation on federal preemption set forth in 29 U.S.C. § 1144(b)(6)(A)(ii), NBAT contends that the Commissioner lacks the authority under the laws of Kentucky to assert jurisdiction over its activities. Specifically, NBAT argues that KRS 304.11–045 gives the Commissioner jurisdiction over entities providing coverage for health care expenses only if such entities fail to provide proof that they are subject to the jurisdiction of another state agency or the federal government. NBAT argues that since it is subject to the provisions of ERISA, the Commissioner lacks the authority to exercise jurisdiction she might otherwise have pursuant to KRS 304.11–045. In addition, NBAT argues that the Commissioner cannot apply Kentucky insurance laws to it by virtue of the ERISA "savings clause" since NBAT is not and cannot be deemed an insurer. *FMC v. Holliday,* 498 U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). NBA joins in the arguments raised by NBAT and stresses that since NBAT is subject to federal regulation as an employee benefit plan, KRS. 304.11–045 bars the Commissioner from asserting regulatory authority over NBAT or NBA.

The Commissioner contends that NBAT is an unauthorized insurer doing business in the Commonwealth and is, therefore, subject to regulation under the ERISA "savings clause." Further, the Commissioner contests the assertion that NBAT is an ERISA "employee benefit plan" and argues that, in any event, state laws which regulate insurance are applicable to NBAT under 29 U.S.C. § 1144(b)(6)(A)(ii) given its MEWA status. As to NBA, the Commissioner asserts that, having the power to regulate NBAT, given the extent of control exercised by NBA over NBAT, she likewise has the authority to regulate NBA. Finally, as to the argument that KRS 304.11–045 does not allow the Commissioner to exercise jurisdiction over NBAT since it is subject to federal jurisdiction under ERISA,

the Commissioner contends that this court is barred by the Eleventh Amendment to the United States Constitution from considering the extent of her authority under Kentucky law.

The issues which must be resolved at this juncture are:

1. Whether NBAT is an ERISA employee benefit plan and, if so;

2. Whether 42 U.S.C. § 1144 preempts state laws which relate to NBAT and/or NBA and prohibit the Commissioner from attempting to regulate NBAT and/or NBA?

## IV. ANALYSIS

### A. ERISA STATUS

In two opinion letters issued by the Department of Labor regarding NBAT, the Department refused to render an opinion on the issue of whether NBAT (or the plans that it represents) is or is not an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). The Commissioner, in her reply brief, repeatedly suggests to the Court that it need not address the issue of NBAT's status under ERISA inasmuch as the Court can determine state jurisdiction by focusing solely on the MEWA exceptions to ERISA preemption set forth in 29 U.S.C. § 1144(b)(6). The option chosen by the Department of Labor and urged by the Commissioner is attractive. However, in the interests of fairness to the litigants and judicial economy this Court will not side step the issue of NBAT's standing under ERISA.

In order to determine whether NBAT is an employee welfare benefit plan under 29 U.S.C. §§ 1002(1) and 1003, the court must address the issue of whether NBAT is a plan, fund or program "established or maintained" by an employer or employee organization, to provide benefits to employees or their beneficiaries. Since it is apparent that the types of benefits provided through NBAT fall within the category of benefits referred to in 29 U.S.C. § 1002(1) and that NBAT was not an "employee organization", whether NBAT was an ERISA plan will turn upon the issue of whether it

was "established or maintained by an employer" to provide benefits to employees or their beneficiaries.

The record before the court indicates that NBAT was established by a group of employers to provide health care benefits to their employees. Although NBA unquestionably exerted extensive if not exclusive control over NBAT's claims processing operations, under a literal interpretation of 29 U.S.C. § 1002(1) NBAT was nonetheless *established* by employers for the purpose of providing benefits to their employees.

In reaching the conclusion that NBAT is an ERISA welfare benefit plan, the Court is aware of decisions from other jurisdictions and commentary from legal scholars concerning ERISA standing of multiple employer trusts ("METs") and MEWAs which may, to some extent, conflict with the conclusion reached here. For example, in *Insurance & Prepaid Benefits Trusts v. Marshall*, 90 F.R.D. 703 (C.D.Cal.1981), a group of benefit trusts filed a declaratory judgment action to determine whether the trusts were covered under and subject to ERISA. The trusts were formed by an entity known as Insurance and Prepaid Benefits Trust ("IBT"). IBT was formed by Thomas Wilkie who served as trustee. Wilkie's wholly owned insurance company, IBI, sold a group policy to the trusts and served as the administrator. Concluding that the types of benefits provided met the requirements of ERISA, the court turned to the issue of whether the trusts were established or maintained by an employer within the meaning of 29 U.S.C. § 1002(1). In holding that the trusts were not established or maintained by an employer, the court stated:

> METs are entities utilized by insurance companies to sell group insurance coverage to unrelated groups, i.e., as an insurance funding vehicle. METs are usually characterized by the following: Employers have no business or social connections with one another; employers are actively solicited by the insurer; it is a profit-generating enterprise; and, what this court considers to be most important, all decisions regarding the trust are made by the insurer, i.e., the participat-

ing employers possess no actual decision-making power.

The *Marshall* Court determined that the extent of authority over trust matters bestowed upon the plan administrator resulted in the conclusion that the trusts were not established or maintained by an employer.

■ This Court, however, finds that NBAT was *established* by a group of employers. Although not *maintained* by the employers, given the fact that 29 U.S.C. § 1002(1) provides that ERISA welfare benefit plans must either be established *or* maintained by employers, the NBAT plans fall within the definition. NBAT was the successor to the Mid–Am Soft Drink Bottling Trust which, itself was the successor to the Retailers of Mid–America Canning Insurance Trust Fund. These trusts were established by employers in the bottling and canning industries. Accordingly, the Court concludes that NBAT is subject to and governed by ERISA.

## B.  PREEMPTION

■ The question of federal ERISA preemption is governed by 29 U.S.C. § 1144. The preemptive reach of this statute has consistently been construed broadly to preempt those state laws which "in the normal sense of the phrase, [have] a connection with or reference to" any employee benefit plan provided the effect upon the plan is not tenuous or remote. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987). Although retaining the authority to regulate insurance under the "savings clause" of 29 U.S.C. § 1144(b), the Commissioner is prohibited from applying Kentucky insurance laws to ERISA plans by deeming such plans to be insurance companies. *FMC Corp. v. Holliday, supra.* In short, state insurance laws which apply directly to employee benefit plans are exempted from the "preemption exception" of the savings clause by the deemer clause of 29 U.S.C. § 1144(b). *Metropolitan Life Insurance*

*Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

If NBAT were not a MEWA, the inquiry into the preemptive effect of 29 U.S.C. § 1144(a) would end with an analysis of whether any state laws sought to be applied to NBAT "relate to" an ERISA employee benefit plan. However, due to the fact that NBAT is admittedly a self-funded MEWA, 29 U.S.C. § 1144(b)(6)(A)(ii) applies.

This statute provides:
Notwithstanding any other provision of this section—

. . . . .

(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this title, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this title.

The plain and unambiguous language of 29 U.S.C. § 1144(b)(6)(A)(ii) reveals that NBAT, as a self-funded MEWA, is subject to any law of the Commonwealth of Kentucky which regulates insurance provided such laws are not inconsistent with title I of ERISA. In reaching this conclusion, however, the court must again point out that, although subject to the insurance laws of the Commonwealth of Kentucky, NBAT is likewise subject to and governed by title I of ERISA.

### C. ELEVENTH AMENDMENT

Having determined that NBAT is subject to state insurance laws which are not inconsistent with title I of ERISA, the court must now address the issue of whether it has jurisdiction to determine the authority of the Commissioner to regulate NBAT under KRS 304.11–045.

The Eleventh Amendment to the United States Constitution provides:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

In *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Court held that a federal court is prohibited under the Eleventh Amendment from instructing state officials on how to conform their conduct to state law. In so doing, the *Halderman* Court stated:
A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. *Id.* at 106, 104 S.Ct. at 911.

Based on the decision in *Halderman* this court cannot, consistent with the Eleventh Amendment, determine whether and to what extent the Commissioner is empowered to regulate NBAT under Kentucky law. Rather, the holding of this court is limited to the conclusion that ERISA does not prevent the Commonwealth of Kentucky from regulating a self-funded MEWA such as NBAT provided the state law does not conflict with title I of ERISA. The determination of whether the Commissioner, although not prohibited by ERISA from regulating NBAT under 29 U.S.C. § 1144(b)(6)(A)(ii), lacks the authority under state law to regulate NBAT is an appropriate issue for the courts of the Commonwealth of Kentucky.

### D. AUTHORITY OF THE COMMISSIONER OVER NBA

■ Having concluded that ERISA does not preempt a state from regulating a self-funded MEWA provided the insurance laws applied to the MEWA are not inconsistent with ERISA, the court now turns to the issue of whether the Commissioner has the authority to regulate NBA.

The Commissioner argues that, having the authority to regulate NBAT, it naturally follows that she has the authority to

regulate NBAT's administrator. In support of this argument, the Commissioner asserts that NBA exercised complete control over NBAT, including the ability to process and settle claims, sign checks against NBAT accounts and determine the level of plan participant contributions. Further, the Commissioner points out that the extent of NBA involvement in and control over NBAT is evidenced by the fact that NBAT dissolved immediately following the resignation of NBA as its plan supervisor.

NBA contends that, as a third party administrator for an ERISA regulated entity—NBAT, it is subject to the exclusive jurisdiction of the Department of Labor.

The issue of whether a state has the authority to apply its insurance laws under 29 U.S.C. § 1144(b)(6)(A)(ii) to an entity which supervised and administered a non-fully insured MEWA is novel. However, for the court to conclude that NBA is not subject to state insurance laws consistent with 29 U.S.C. § 1144(b)(6)(A)(ii) would require the court to find (1) that the state laws sought to be applied against NBA "relate to" an employee benefit plan, and (2) that the MEWA status of the entity which NBA supervised and controlled does not effect the broad preemptive reach of 29 U.S.C. § 1144(a).

Although not specifically on point, a decision from the United States Court of Appeals for the Second Circuit regarding the application of the alter ego doctrine to ERISA fiduciaries is instructive. In *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2nd Cir.1987), trustees of an ERISA pension plan filed suit against an investment manager, an investment banking corporation, a broker-dealer corporation and the individual owners of these entities for violations of the prohibited transactions provisions of ERISA. In discussing the issue of whether the individual defendants, the investment banking corporation and the broker-dealer corporation could be held responsible for a breach of ERISA fiduciary obligations by the investment manager for the plan, the court held:

Neither the separate corporate status of the three corporations nor the general principle of limited shareholder liability afford protection where exacting obeisance to the corporate form is inconsistent with ERISA's remedial purposes. Parties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control.

The Supreme Court has 'consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies.' ...

Courts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined. (*citations omitted*).

To hold that NBA is entitled to federal preemption of *all* state laws in accordance with 29 U.S.C. § 1144(a) as opposed to the limited preemption of state laws under 29 U.S.C. § 1144(b)(6)(A)(ii) would appear to undermine the purpose of allowing for both state and federal regulation of MEWAs. Congress intended to authorize states to apply their insurance laws to MEWAs to the extent such laws are not inconsistent with ERISA. Having such authority, the court must conclude that Congress intended to allow states to apply their insurance laws to those entities who administer and control MEWAs otherwise, the authority given to the states under 29 U.S.C. § 1144(b)(6) would be illusory. Accordingly, NBA like NBAT is subject to the insurance laws of the Commonwealth of Kentucky in accordance with 29 U.S.C. § 1144(b)(6)(A)(ii).

## V.  CONCLUSION

For the reasons stated, the court finds, as a matter of law, that the Commonwealth of Kentucky is not prohibited by 29 U.S.C. § 1144(a) from regulating NBAT and NBA through its insurance laws provided such laws are not inconsistent with title I of ERISA. 29 U.S.C. § 1144(b)(6)(A)(ii). Accordingly, the Commissioner is entitled to summary judgment on this issue. Whether the Commissioner has the authority under

Kentucky law to regulate either NBAT or NBA is an appropriate issue for the Kentucky Courts.