878 P.2d 417 (1994)
319 Or. 451
David MARKS, James Wendell Ball, Paul Pettit and Agisa de Sieyes, Respondents on Review,
v.
The McKENZIE HIGH SCHOOL FACT-FINDING TEAM, Petitioner on Review.
CC 92C-10440; CA A75255; SC S40517.
Supreme Court of Oregon.
Argued and Submitted January 5, 1994.
Decided August 11, 1994.
*418 James M. Brown, of Enfield, Guimond, Brown & Collins, Salem, argued the cause and filed the petition for petitioner on review.
Edmund J. Spiney, Eugene, argued the cause for respondents on review.
Philip Schradle, Asst. Atty. Gen., Theodore R. Kulongoski, Atty. Gen., and Virginia L. Linder, Sol. Gen., Salem, filed a brief for amicus curiae Atty. Gen. of the State of Oregon.
Benjamin Walters, Deputy City Atty., and Jeffrey L. Rogers, City Atty., Portland, filed a brief for amicus curiae League of Oregon Cities.
*419 Before CARSON, C.J., and GILLETTE, VAN HOOMISSEN, FADELEY, UNIS and GRABER, JJ.
GILLETTE, Justice.
In this action for injunctive relief, plaintiffs sought to inspect records maintained by defendant, a "fact-finding team" that had been selected by a private association of school administrators. The team allegedly was charged by a public school district board with investigating, reporting on, and making recommendations with respect to certain aspects of the operation of a high school within the district that had become the subject of public controversy. Only the team was named as defendant; neither the school district nor its board is a party to this litigation. The trial court dismissed the action on the ground that plaintiffs had not alleged sufficient facts to show that defendant team was a "public body" subject to the Inspection of Public Records Law, ORS 192.410 to 192.505. A divided panel of the Court of Appeals reversed, the majority holding that plaintiffs had alleged facts sufficient to show that defendant was a "public body." Marks v. McKenzie High School Fact-Finding Team, 121 Or.App. 146, 854 P.2d 488 (1993). We allowed review and now reverse the decision of the Court of Appeals.
For the purpose of review, we assume the truth of all well-pleaded facts alleged in the complaint and give plaintiffs the benefit of all favorable inferences that may be drawn from those facts. Stringer v. Car Data Systems, Inc., 314 Or. 576, 584, 841 P.2d 1183 (1992); Oksenholt v. Lederle Laboratories, 294 Or. 213, 215, 656 P.2d 293 (1982). The complaintwhich is scantyalleges that, on December 18, 1991, the school board for the McKenzie School District asked the Confederation of Oregon School Administrators (COSA)[1] to appoint a "fact-finding team" to "investigate concerns regarding McKenzie High School." COSA subsequently appointed three of its memberstwo retired public school administrators and another administrator on leaveto constitute the team. According to the complaint, the team's charge was to investigate certain aspects of the high school's operation, to prepare a report regarding that investigation, and to make any recommendations that the team deemed appropriate.[2] The complaint does not allege that defendant had a contract or other form of agreement with the school board or that defendant was to receive any public funds as compensation for the work. Neither does the complaint allegenor have the parties arguedthat the creation and use of the team by the school district was a subterfuge aimed at avoiding the requirements of the Public Records Law.
The complaint further alleges that, in February 1992, plaintiffsa group of parents with children in the McKenzie School Districtsought to inspect records generated and maintained by defendant team in the course of its investigation. Defendant refused the request. Plaintiffs asked the Marion County District Attorney[3] to order disclosure *420 of the records pursuant to ORS 192.450 and 192.460, but the district attorney refused to do so. The present action followed.
Defendant moved to dismiss the action on the ground that it was not a "public body" within the meaning of ORS 192.410(3),[4] set out infra, and therefore not subject to the Inspection of Public Records Law, ORS 192.410 to 192.505. The trial court agreed and ordered dismissal for failure to state ultimate facts sufficient to constitute a claim, pursuant to ORCP 21A(8). The court allowed plaintiffs 10 days to amend their complaint, but plaintiffs chose not to replead.
Following entry of judgment, plaintiffs appealed the dismissal of their action and, as noted, a divided panel of the Court of Appeals reversed and remanded. The lead opinion in the Court of Appeals held that plaintiffs had "alleged facts sufficient to show that defendant was a commission of the school district" and, therefore, was a "public body" within the meaning of ORS 192.410(3). Marks v. McKenzie High School Fact-Finding Team, supra, 121 Or.App. at 149, 854 P.2d 488. The lead opinion concluded that the word "commission" should be "broadly defined to include nongovernmental groups performing duties at the request of a governmental body." Ibid. A second member of the panel concurred, concluding in a separate opinion that "[t]he team is a `commission' or `agency' of the school district under ORS 192.410([3]) because it performed school district business at the district's request and under its authority and was accountable to the school board for its effort." Id. at 151, 854 P.2d 488 (Durham, J., concurring). The third member of the panel dissented, concluding that the term "public body" in ORS 192.410(3) was intended to encompass only "officially constituted governmental bodies." Id. at 152, 854 P.2d 488 (Deits, P.J., dissenting). We allowed review to address the proper interpretation of ORS 192.410(3).
ORS 192.420 provides that, subject to certain exceptions,[5] "[e]very person has a right to inspect any public record of a public body in this state." (Emphasis supplied.) ORS 192.410(4) defines "public record" as "any writing containing information relating to the conduct of the public's business * * * prepared, owned, used or retained by a public body regardless of physical form or characteristics." Under that definition, the records sought by plaintiffs in this case cannot be "public records" unless defendant is a "public body."[6] ORS 192.410(3) defines "public body" as follows:
"`Public body' includes every state officer, agency, department, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council, or agency thereof; and any other public agency of this state."
(Emphasis supplied.)
Plaintiffs argue that, because the district "commissioned" defendant to investigate concerns regarding McKenzie High School, defendant was a "commission" of the district and therefore a "public body" within the meaning of ORS 192.410(3). Defendant team contends, on the other hand, that the word "commission," as used in ORS 192.410(3), is a term of art that "connotes conveyance of legal authority." Defendant argues that, as a committee selected by COSA, it is not a "commission" of the school district because, under the facts alleged by plaintiffs in their *421 complaint, the district did not delegate to defendant any "specific legal authority" "to carry out some official duty, service or responsibility."
In interpreting a statute, this court's task is to determine the intent of the legislature. PGE v. Bureau of Labor and Industries, 317 Or. 606, 610, 859 P.2d 1143 (1993). We begin with the text and context of the statute in question. Id. at 610-11, 859 P.2d 1143. Context includes "other provisions of the same statute and other related statutes." Id. at 611, 859 P.2d 1143.
ORS 192.410(3) defines "public body" to include a variety of state and local governmental entities and "any other public agency of this state." The question thus becomes whether the legislature intended to encompass an entity such as defendant within the term "public body," which includes (but is not necessarily limited to) entities that are a "commission" or a "public agency."[7] The terms "commission" and "public agency" are not defined in the Inspection of Public Records Law. Indeed, we have found nothing in the text or context of ORS 192.410(3) that sheds any light on whether either term was meant to encompass an entity like defendant.
When the inquiry into the text and context of a statute does not make the legislature's intent clear, this court looks to legislative history for guidance. PGE v. Bureau of Labor and Industries, supra, 317 Or. at 611-12, 859 P.2d 1143. In this case, however, the legislative history of the Inspection of Public Records Law provides little assistance. It is clear that the purpose of the legislation was to make the records of public bodies available to the general public, in order to further the general public's ongoing review of the actions of bodies created to serve the public interest, but there is nothing in that history to suggest that the legislature ever considered specifically the scope or meaning of the term "commission" or "public agency."
In a case such as this, where the text, context, and legislative history of the statute under consideration do not make the legislative intent clear, this court may resort to general maxims of statutory construction to aid in resolving the uncertainty. PGE v. Bureau of Labor and Industries, supra, 317 Or. at 612, 859 P.2d 1143. Under one of those maxims, the court will attempt to determine how the legislature would have intended the statute to be applied had it considered the issue. Ibid.; see also Westwood Homeowners Assn., Inc. v. Lane County, 318 Or. 146, 158, 864 P.2d 350 (1993) (applying maxim), modified 318 Or. 327, 866 P.2d 463 (1994). Applying that maxim to the present case, we believe that the legislature would have intended that the overarching defined term "public body" in the Oregon Inspection of Public Records Law be applied in a manner that is similar to the way that the operative defined term has been applied in other jurisdictions with comparable public records laws. That approach is appropriate, because the present version of the Oregon Inspection of Public Records Law was drafted after research had been conducted into the public records laws of "every other state," as well as the federal Freedom of Information Act, 5 U.S.C. § 552 (1988). See Minutes, Joint Professional Responsibility Committee, February 26, 1973, p. 3 (discussion of House Bill 2157). It is true that the legislature did not adopt any of those statutes from other jurisdictions. Nonetheless, we believe that the legislature would have intended the Oregon Inspection of Public Records Law to be applied in a manner consistent with the application of those comparable laws in other jurisdictions upon which the Oregon law was modeled. Accordingly, we turn to an examination of the decisions of those other jurisdictions where the question of what constitutes a covered governmental entity has been considered.
In most instances, other jurisdictions have selected the term "agency," rather than *422 "body," as the broad operative term that describes the range of governmental entities covered by the jurisdiction's public records law. However, our reading of the cases leads us to conclude that the difference in terms does not connote a difference in concept: As overarching ideas, the two terms are fungible.
In determining whether a particular entity qualifies as an "agency" within the meaning of the federal Freedom of Information Act (FOIA), which was one of the statutes reviewed by the Oregon legislature before it enacted the Public Records Law, "the federal courts have developed what may be termed a `functional equivalent' test." Board of Trustees v. Freedom of Info. Comm'n, 181 Conn. 544, 436 A.2d 266, 270 (1980). Under that test, a court analyzes various factors to determine whether, on balance, the entity in question is the "functional equivalent" of a public agency.
One of the earlier cases in which a federal court applied the "functional equivalent" test was Washington Research Proj., Inc. v. Department of H., E. & W., 504 F.2d 238 (D.C.Cir.1974), cert. den. 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). In that case, the issue was whether "initial review groups" (IRGs)nongovernmental consultants used by the National Institutes of Mental Health (NIMH) to review grant proposalswere themselves "agencies" subject to the FOIA. The court concluded that the IRGs were not "agencies." Among other things, the court observed that the IRGs did not have any authority in law to make decisions on the grant proposals, but could make only recommendations. Id. at 247-48. The court wrote:
"Clearly, the work now done by IRGs could again be done by the NAMHC[8] if it sat continuously instead of meeting three times a year for about two days each time. Employing consultants to improve the quality of work that is done cannot elevate the consultants to the status of the agency for which they work unless they become the functional equivalent of the agency, making its decisions for it. * * *
"The important consideration is whether [the consultant] has any authority in law to make decisions. The IRGs have not * * *."
Ibid.
Although the court in Washington Research put primary emphasis on the legal authority to make decisions, other federal courts have applied a more wide-ranging analysis. In CIBA-GEIGY Corp. v. Mathews, 428 F.Supp. 523, 526-27 (S.D.N.Y.1977), the court summarized the "functional equivalent" analysis as follows:
"Courts analyzing the `agency' status of various organizational entities under the FOIA have not applied a precise standard but have adopted a functional analysis, examining numerous factors including whether the organization has the authority in law to perform the decisionmaking functions of a federal agency and whether its organizational structure and daily operations are subject to substantial federal control."
The court went on to conclude that a group of university research clinics participating in a joint research project funded by the National Institute of Health was not an "agency" under the FOIA, because "the degree of Government involvement and control in the operations" of the group was insufficient "as a matter of law." Id. at 528.
In Ry. Labor Executives' Ass'n v. Consol. Rail Corp., 580 F.Supp. 777 (D.D.C.1984), the issue was whether Conrail, a regional rail corporation created by Congress and sustained by substantial federal financial assistance, was an "agency" under the FOIA. The court pointed out that Congress had expressly provided by statute that Conrail would not be deemed an agency of the federal government. The court then concluded that the same result would obtain under the "functional equivalent" analysis. The court wrote:
"Courts making this analysis have not developed a specific standard by which each entity can be judged. Rather, the *423 diverse array of organizational arrangements that exist for the performance of government functions requires that `each arrangement must be examined anew and in its own context.' All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive.
"The following factors are among those most often cited in this analysis: The performance of governmental functions by the entity, the presence of substantial government control over the entity's day to day operations, authority of the entity to make and implement decisions, the nature of the government's financial involvement with the entity, the existence of a federal charter, and the status of the entity's employees."
Id. at 778-79 (citations omitted). Applying those factors to the case before it, the court concluded that Conrail was not an "agency" because it "lacks those attributes of agencies that have been considered significant in this analysis." Id. at 779.
In summary, the case law that has evolved under the FOIA has developed a "functional equivalent" analysis for the purpose of determining which entities fall within the scope of the Act. That case law has developed after the FOIA was used as one of the sources for creation of the Oregon law. Thus, it is in no sense binding. Nevertheless, as noted above, we believe that the Oregon legislature would have intended the Oregon law to be applied in a manner consistent with the application of those statutes, like the FOIA, upon which the Oregon law was modeled. We turn to an examination of the experience of our sister states.
The courts in many states also have applied a "functional equivalent" analysis in determining whether particular entities are subject to state public records laws. For example, in Board of Trustees v. Freedom of Info. Comm'n, supra, the Supreme Court of Connecticut looked to federal case law for guidance in construing the term "public agency" in Connecticut's Freedom of Information Act. The court wrote:
"The major and discrete criteria which federal courts have utilized in employing a functional equivalent test are: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government."
436 A.2d at 270-71. The court went on to conclude that, under the foregoing criteria, a specially chartered educational institution was a "public agency" for purposes of the Connecticut FOIA because the institution
"performs a basic governmental function in providing public education at a secondary school level, is nearly entirely (over ninety-five percent) publicly financed, has its operations examined and certified by the state board of education so as to be eligible for reimbursement for tuition fees by local towns and for other statutory benefits, and is an entity created by statute for the sole purpose of maintaining a public school for the benefit of the inhabitants of Woodstock and other towns in the vicinity * * *."
Id. at 271.
In a later case, the Supreme Court of Connecticut applied the same "functional equivalent" test to conclude that a statewide humane society was not a "public agency" within the meaning of the Connecticut FOIA. Connecticut Humane Soc. v. Freedom of Info. Comm'n, 218 Conn. 757, 591 A.2d 395 (1991). The court stated that "whether a hybrid public/private entity is a public agency subject to the FOIA requires a balanced case-by-case consideration of various factors." 591 A.2d at 397. The court observed that, although the society had a government charter, the society did not receive any government funding, the state did not control or regulate the society in any way, and the society was not required to perform any of the activities that it was authorized to perform by statute. Id. at 398-99. "Balancing all the applicable factors," the court concluded that the humane society was not a "public agency." Id. at 399.
Courts in New York and Florida also have applied "functional equivalent" analyses derived from federal case law. In Consolidated Edison Co. v. Insurance Dept., 140 Misc.2d 969, 532 N.Y.S.2d 186 (Sup.Ct.1988), the issue was whether an entity charged with the *424 task of liquidating insolvent insurance carriers was an "agency" within the meaning of the New York Freedom of Information Law. Applying several factors from federal cases under the FOIA, the court concluded that the entity was not an "agency" because the entity had "none of the attributes which are ordinarily associated with a State agency or bureau." 532 N.Y.S.2d at 189.
In Parsons & Whittemore v. Metro. Dade County, 429 So.2d 343 (Fla.App.1983), the issue was whether private entities that had entered into business contracts with a county were subject to the disclosure obligation imposed by the Florida Public Records Act on private business entities that act "on behalf of a public agency. After pointing out the factors analyzed in federal case law under the FOIA, the court concluded that the private entities were not subject to the state disclosure requirement, because the entities "did not perform an essentially governmental function or participate in any decisional process which would be undermined if their records were not open to public inspection." Id. at 346.
Finally, courts in several other states have taken similar "functional" approaches to determining whether particular entities are subject to state public records or public meetings laws. See, e.g., North Cent. Ass'n of Colleges & Schools v. Troutt Bros., 261 Ark. 378, 548 S.W.2d 825 (1977) (holding that state committee of college-accrediting body was subject to public meetings law); Hopf v. Topcorp, Inc., 170 Ill.App.3d 85, 122 Ill.Dec. 629, 527 N.E.2d 1 (1988) (holding that development corporations owned by city and private university were not public entities subject to public meetings law) appeal den. 122 Ill.2d 575, 125 Ill.Dec. 217, 530 N.E.2d 245; Guste v. Nicholls College Foundation, 564 So.2d 682 (La.1990) (holding that alumni federation of state university was public body subject to public records law); Bradbury v. Shaw, 116 N.H. 388, 360 A.2d 123 (1976) (holding that mayor's industrial advisory committee was subject to public records and meetings law); News & Observer Pub. Co. v. Wake County Hospital System, 55 N.C.App. 1, 284 S.E.2d 542 (1981) (holding that incorporated county hospital was public body subject to public records law), rev. den. 305 N.C. 302, 291 S.E.2d 151, cert. den. 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982). See generally Annot., What Constitutes an Agency Subject to Application of State Freedom of Information Act, 27 A.L.R.4th 742 (1984 & Supp.1993) (listing and summarizing relevant cases).
Because the lines of analysis in the foregoing cases became fully developed only after the Oregon law took effect, they are not expositions of the expressed intent of the Oregon legislature. Nevertheless, we find the analysis that emerges from those cases persuasive as to what the legislature would have intended, had it considered the specific issue. We believe that, for purposes of construing Oregon's operative term, the legislature would have intended this court to apply a "functional" approach similar to that taken by the federal courts and by the courts of many of our sister states (as detailed above). Accordingly, we hold that the determination of whether a particular entity is a "public body" within the meaning of ORS 192.410(3) will depend on the character of that entity and the nature and attributes of that entity's relationship with government and governmental decision-making. In determining the proper characterization of a particular entity, the following factors, which we have synthesized from the case law discussed above, are relevant, although no single factor is either indispensable or dispositive:
(1) The entity's origin (e.g., whether the entity was created by government or had some origin independent of government).
(2) The nature of the function assigned to and performed by the entity (e.g., whether that function is one traditionally associated with government or is one commonly performed by private entities).
(3) The scope of the authority granted to and exercised by the entity (e.g., does the entity have the authority to make binding governmental decisions, or is it limited to making nonbinding recommendations).
(4) The nature and level of government financial involvement with the entity. (Financial support may include *425 payment of the entity's members or fees as well as provision of facilities, supplies, and other nonmonetary support.)
(5) The nature and scope of government control over the entity's operation.
(6) The status of the entity's officers and employees (e.g., whether the officers and employees are government officials or government employees).[9]
We turn to an analysis of the foregoing factors under the facts of the present case as pleaded by plaintiffs in their complaint. We note, first, that defendant did not exist until its three members were appointed by COSA, which was acting at the behest of the school board of the McKenzie School District. Although COSA, a nongovernmental body, played a role in defendant's creation by appointing the actual team members, the school board was ultimately responsible for defendant's existence. The fact that defendant was created at the initiative of the school boarda government bodyweighs in favor of finding that defendant is a "public body."
The function to be performed by defendantan investigation of McKenzie High School's administration of ORS 339.420 and related issues (see supra note 2)was related to the operation of that school. Unquestionably, the operation of a public school is a function traditionally associated with government. Moreover, statutes provide that "the district school board is authorized to transact all business coming within the jurisdiction of the district," ORS 332.072, and that one of the duties of a district school board is "[t]o perform such other duties as the wants of the district may from time to time demand," ORS 332.105(1)(a). The investigatory function to be performed by defendant was sufficiently related to the statutory duties of the school board to weigh in favor of finding that defendant is a "public body."
In contrast, the scope of the authority that plaintiffs allege was granted to defendant weighs against finding that defendant is a "public body." Plaintiffs have not alleged that defendant had any authority to make decisions that would bind the school district; neither do plaintiffs suggest that the district had committed itself in any way to follow defendant's recommendations. Under the facts alleged by plaintiffs, defendant was authorized to conduct an investigation and make recommendationsnothing more. For defendant's recommendations to have had any effect on the operation of McKenzie High School or on any other matter of public concern, the school board would have had to take independent action to implement those recommendations. That fact is most significant in this case, because the school board is itself an accountable public body whose records are subject to the Inspection of Public Records Law, ORS 192.410(3). As a result, plaintiffs would have been entitled to inspect any report and any other documents submitted to the board by defendant in connection with its investigation and recommendations (if any), thereby gaining access to any information that might contribute to any choice of actions that the body with actual powerthe school boardmight make.
The remaining factors in our "functional" analysis of defendant may be dealt with briefly. There is nothing in plaintiffs' complaint to indicate that defendant received any public funds or other financial support from the school district. Also, there is nothing in the complaint to show that the district exercised any control over defendant's operation. According to the allegations of the complaint, the school board did nothing more than define the scope of defendant's investigatory role, i.e., the school board identified the area of public business with which it was concerned. There is nothing in the complaint to suggest that the board exercised any sort of supervision over defendant's day-to-day operation. On the contrary, defendant's "progress report," which plaintiffs appended to their complaint, suggests that defendant itself was in charge of the manner in which it conducted the inquiry. Neither does the complaint allege that defendant's team members or COSA were compensated by the *426 school district or any other government entity for their work on the investigation. Finally, the designation of the entity as a "factfinding team" sheds no light on its characterization for purposes of the Public Records Law. In summary, there are no facts alleged in the complaint to show that government was significantly involved in defendant's operation, beyond telling the team what the school board wanted to know.[10]
Weighing together all the foregoing factors, we conclude that the facts alleged by plaintiffs are insufficient to show that defendant is a "public body" within the meaning of ORS 192.410(3). It is true that plaintiffs allege that defendant was created at the behest of the school board to perform an investigatory function related to the statutory duties of the board. Beyond that, however, there is nothing in the complaint to show that the school board had any control or supervision over defendant's operation, or that defendant received any government support, monetary or otherwise. More importantly, the complaint fails to show that defendant was given any decision-making authority, other than the authority that defendant exercised over the conduct of the investigation. Without any greater decision-making authority, defendant's investigation could have affected matters of public concern only through the vehicle of defendant's report, which would have been accessible as a public record of the school board when submitted to the board. The policy of governmental openness that underlies the Inspection of Public Records Law rests on the premise that the public should have access to information on which governmental decisions are based. Cf. ORS 192.620 ("The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made.") (emphasis supplied). In this case, because defendant's operations were independent of government, and because defendant did not have any authority to make decisions for the school board, access to defendant's records was not necessary to serve the policy goals behind the Inspection of Public Records Law.
Plaintiffs' complaint failed to state sufficient facts to show that defendant was a "public body" subject to the Inspection of Public Records Law, as we now have explained the concept of "public body." The Court of Appeals' contrary conclusion was error.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.
UNIS, Justice, dissenting.
The issue in this action for injunctive relief is whether plaintiffs alleged facts in their complaint sufficient to establish that the McKenzie High School Fact-Finding Team (defendant) is a "public body" whose records may be subject to disclosure under the Oregon Inspection of Public Records Law (Public Records Law), ORS 192.410 to ORS 192.505. The majority holds that the facts alleged in plaintiffs' complaint are insufficient to show that defendant is a "public body" within the meaning of ORS 192.410(3). I would hold to the contrary and, therefore, respectfully dissent.
Because plaintiffs' complaint was dismissed by the trial court for failure to state a claim pursuant to ORCP 21A(8), this court on review, in considering the sufficiency of plaintiffs' complaint, must accept all well-pleaded allegations in the complaint as "true" and give plaintiffs the benefit of all favorable inferences that may be drawn from those facts. Stringer v. Car Data Systems, Inc., 314 Or. 576, 584, 841 P.2d 1183 (1992), reconsideration denied 315 Or. 308, 844 P.2d 905 (1993).
Plaintiffs' complaint alleges that on December 18, 1991, the School Board of the McKenzie School District (the District) asked the Confederation of Oregon School Administrators (COSA), a private, non-profit organization, *427 to appoint a fact-finding team to investigate alleged problems at McKenzie High School. That fact-finding team is defendant. Three individuals were appointed as its members: a retired Salem-Keizer School District deputy superintendent and director of personnel services, a retired Central School District middle school principal, and a Greater Albany School District high school principal on leave.
Plaintiffs' complaint alleges that the District "commissioned [d]efendant to investigate concerns regarding McKenzie High School." (Emphasis added). To carry out that commission, the school board for the District charged defendant to
"submit a report to the McKenzie School District which will:

"1. Determine whether McKenzie High School encourages in its students the development of respect for the individual differences of other students.
"2. Determine if ORS 339.420 has been appropriately administered. ORS 339.420 provides, `[Child excused to receive] religious instruction. Upon application of the parent or guardian of the child, or, if the child has attained the age of majority, upon application of the child, a child attending the public school may be excused from school for periods not exceeding * * * five hours in any week for secondary pupils to attend weekday schools giving instruction in religion.'
"3. Determine whether discipline guidelines, relating to denial of class time, are appropriate and, if so, whether those guidelines have been administered appropriately.
"4. Determine whether the complaint process is easily accessible and fairly administered.
"5. Determine whether the District employment practices are fair and equitable and whether they are administered without regard to religion.
"6. Make any recommendations it deems appropriate." (Emphasis added; ellipsis in original).
According to plaintiffs' complaint, the procedures to be used by defendant to carry out its commissioned task included "reviewing a number of documents including the McKenzie School District Policies and the McKenzie Senior High Parent Student Handbook," "reviewing letters and petitions which [had] recently been submitted to the District," and "develop[ing] a list of individuals" to be invited to talk with defendant. Concerned individuals "who [had] not been invited by [defendant] for interview [could] request an interview by calling the District office." Defendant also was to "at least make a further progress report at the February 19 Board meeting."[1]
Whether the records generated and maintained by defendant relating to the performance of its commissioned task are "public records" subject to the Public Records Law depends on the scope of that law. The Public Records Law provides that "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505." ORS 192.420. In order to be subject to inspection, therefore, a record must be (1) a public record (2) of a "public body" that is (3) not subject to an express exemption to the Public Records Law.
ORS 192.410(4) defines "public record":
"`Public record' includes any writing containing information relating to the conduct of the public's business, including but not limited to court records, mortgages, and deed records, prepared, owned, used or retained by a public body regardless of physical form or characteristics." (Emphasis added).
Thus, to be a "public record" subject to disclosure, a writing (1) must contain information relating to the conduct of the public's business and (2) must be prepared, owned, used, or retained by a "public body." To determine whether a document is a public *428 record and therefore subject to possible disclosure, it is essential to determine whether the entity that prepared, owned, used, or retained the record is a "public body."
ORS 192.410(3) provides:
"`Public body' includes every state officer, agency, department, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council, or agency thereof; and any other public agency of this state." (Emphasis added).
In interpreting a statute, this court seeks to discern the intent of the legislature. ORS 174.020. The first step of that process is to examine the text and the context of the provision itself and other related statutes. PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-11, 859 P.2d 1143 (1993).
The method that the legislature chose to define entities within the government or performing governmental functions that must comply with the requirements of the Public Records Law was to expressly enumerate the types of entities covered. The legislature has identified three different categories of entities in the definition of "public body" in ORS 192.410(3). The first category includes state officers, agencies, departments, divisions, bureaus, boards, and commissions. Nothing in plaintiffs' complaint suggests that defendant is in the first category of entities in the definition of "public body" in ORS 192.410(3).
The second category includes local governments, specifically "every county and city governing body, school district, special district [or] municipal corporation." ORS 192.410(3). The second categorylocal governmental bodiesalso covers subdivisions or subordinate entities of the local governments, which include any board, department, commission, council, or agency of the local government. The third category is a catch-all category covering any other public agency of the state.[2]
The majority correctly concludes that "the school board is itself an accountable public body whose records are subject to the * * * Public Records Law[.]" 319 Or. at 465. To determine whether defendant is in the second or third category of "public body," it is necessary to consider the facts as alleged in plaintiffs' complaint and all favorable inferences drawn from those allegations. The majority acknowledges that under that standard the facts alleged by plaintiffs are sufficient to show that: (1) "defendant was created at the behest of the school board," 319 Or. at 465-466; (2) "the school board was ultimately responsible for defendant's existence," id. at 425; (3) "[t]he function to be performed by defendant * * * was related to the operation of [a public] school," id.; (4) "the operation of a public school is a function traditionally associated with government," id.; and (5) "[t]he investigatory function to be performed by defendant was * * * related to the statutory duties of the school board," id.
The majority errs, however, in failing to acknowledge that the complaint specifically alleges that the "School Board * * * commissioned [d]efendant to investigate concerns regarding McKenzie High School." (Emphasis added). The verb "commissioned" means "to endow with effective right or power[;] authorize, empower[;] to appoint to a certain task, mission, function, or duty." Webster's New International Dictionary 457 (3d ed. 1993). See also Black's Law Dictionary 272 (6th ed. 1990) (defining "commission" as "[a] warrant or authority * * * issuing from the government, or one of its departments, * * * empowering a person or persons named to do certain acts, or to exercise the authority of an office[;] [t]he authority or instructions under which one person transacts business or negotiates for another"). Thus, plaintiffs' complaint can be read to establish that defendant was acting for and on behalf of the District.
The majority also errs in stating that "the complaint fails to show that defendant was given any decision-making authority, other *429 than that authority which defendant exercised over the conduct of the investigation." 319 Or. at 466. It is true that defendant was directed to "[m]ake any recommendations [to the school board] it deems appropriate." What the majority fails to recognize is that in carrying out its commissioned task, plaintiffs' complaint alleges that defendant was "charge[d]" by the school board to make five specified determinations. To "determine" is "to settle a question or controversy about; * * * to settle or decide by choice of alternatives or possibilities." Webster's New International Dictionary 616 (3d ed. 1993). The majority's conclusion that "[u]nder the facts alleged by plaintiffs, defendant was authorized to conduct an investigation and make recommendationsnothing more[,]" 319 Or. at 465 is, therefore, wrong. Stated differently, under the facts alleged by plaintiffs, defendant is not, as the majority states, a subordinate entity with a purely advisory function. Defendant was authorized to make recommendations, but those recommendations were to be based on the decisions that it was "charged" to make for and on behalf of the District.
Moreover, in performing its commissioned task for and on behalf of the District, defendant used the resources of the District. Specifically, concerned individuals who were not invited by defendant for interviews could request an interview "by calling the District office."
The functions performed by defendant for and on behalf of the District are at the core of the school board's responsibility. Those functions are governmental in nature because local school boards are politically accountable public bodies that are authorized by statute to conduct the business of the school district. ORS 332.072. That business is the public's business. The District's statutory authority includes the responsibility for administering local high schools. ORS 332.105(1)(b).[3]
A fair reading of plaintiffs' complaint and the favorable inferences that may be drawn from the allegations therein establish: (1) defendant was created at the behest of the District, a politically accountable public body, which ultimately was responsible for defendant's existence; (2) defendant was authorized and empowered to act for and on behalf of the District to perform a function traditionally associated with government, i.e., a function related to the operation of a public school; (3) the function to be performed by defendant related to the conduct of the public's business; (4) defendant used the resources of the District in carrying out its commission; (5) the function to be performed by defendant was related to the statutory duties of the District; (6) defendant was vested with decision-making authority concerning the facts that defendant uncovered in its investigation, e.g., "to determine if ORS 339.420 has been appropriately administered"; and (7) defendant's decisions were to be the basis of its recommendations to the District.
The second category of entities in the definition of "public body" in ORS 192.410(3) includes a "school district * * * and any board, department, commission, council, or agency thereof." That category "includes * * * any" of the specified entities. ORS 192.410(3) (emphasis added). The language of the statute is designed to create an inclusive definition. See State ex rel. Frohnmayer v. Oregon State Bar, 307 Or. 304, 308, 767 P.2d 893 (1989) (interpreting similar language of former ORS 192.410(2) to be inclusive rather than exclusive). We need not decide, therefore, whether defendant is technically a commission, board, council, department, or agency of the school board. We do need to decide, however, when a particular entity (here, the District), is itself subject to the Public Records Law, whether an entity (here, defendant) that is subordinate to that entity (the District) must also comply with the requirements of the Public Records Law. In this case, the answer to that question depends on the type of subordinate entities intended by the legislature to be considered *430 a "public body" under the second category of ORS 192.410(3).
The terms "commission," "board," "council," "department," and "agency" are not defined in ORS 192.410 or in any other provision of the Public Records Law. In interpreting undefined terms in a statute, this court typically gives words of common usage their plain, natural, and ordinary meaning. Marcilionis v. Farmers Ins. Co., 318 Or. 640, 645, 871 P.2d 470 (1994). We therefore examine the meanings of the words chosen by the legislature in ORS 192.410(3). A "board" is "a number of persons appointed or elected to sit in council for the management or investigation of a public or private business, trust, or other organization or institution." Webster's New International Dictionary 243 (3d ed. 1993). A "department" is "a discrete territorial or functional division or section of a larger organized or systemized whole" or "an administrative division or branch of a national or municipal government." Id. at 604. A "commission" is "a group of persons directed to perform some duty or execute some trust" or "a government agency having administrative, legislative, or judicial powers." Id. at 457. A "council" is "a somewhat permanent group elected or appointed to constitute an advisory body or a body with a degree of legislative power" or "an administrative body [such as] a local governing instrumentality (as of a town, borough, city, or county)." Id. at 518. An "agency" is "a person or thing through which power is exerted or an end is achieved" or "a department or other administrative unit of government." Id. at 40.
When words are associated together in the text of a statute, the court reads them to explain and limit each other. Behnke-Walker Business College v. Multnomah County, 173 Or. 510, 518, 146 P.2d 614 (1944). From the foregoing definitions, we can draw some conclusions about the type of entity that the legislature intended to be a "public body" under the second category of ORS 192.410(3). All of the terms indicate a relationship involving the delegation of duties or responsibilities. The mere fact that a private individual or group performs duties at the request of a public body does not subject that individual or group to the Public Records Law. The terms "commission," "board," "council," "department," and "agency" indicate that the entity serves a particular assigned function related to the conduct of the public's business. It also is apparent that the function to be performed must be a governmental one, because the delegating body (city, county, school district, etc.) must be a government entity.
From the foregoing, plaintiffs' complaint can be read to establish that defendant is a subordinate entity of the District that is subject to the requirements of the Public Records Law.
Nevertheless, the text and context of ORS 192.410(3) do not disclose a clear legislative intent as to whether a subordinate entity, like defendant, must comply with the Public Records Law. Therefore, the legislative history of the statute should be considered. PGE v. Bureau of Labor and Industries, supra, 317 Or. at 611-12, 859 P.2d 1143. I have examined the legislative history and find that it fails to shed light on the legislature's intended meaning of "public body."
I next consider other aids to statutory construction. PGE v. Bureau of Labor and Industries, supra, 317 Or. at 612, 859 P.2d 1143. One aid that this court finds useful is the principle that the court should attempt to discern what the legislature would have done if it had considered the specific issue. Westwood Homeowners Assn., Inc. v. Lane County, 318 Or. 146, 158, 864 P.2d 350 (1993), adhered to as modified, 318 Or. 327, 866 P.2d 463 (1994). Another general aid to construction is the principle that the court should construe the statute consistently with the overall legislative purpose of the statute. Joachim v. Crater Lake Lodge, 276 Or. 875, 879, 556 P.2d 1334 (1976).
The Public Records Law reflects a strong legislative policy in favor of disclosure of public records. City of Portland v. Rice, 308 Or. 118, 121-22, 775 P.2d 1371 (1989). Any doubts in interpreting the Public Records Law should be resolved in favor of providing information to the public. The underlying policy of such access is that "there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public *431 servants." MacEwan v. Holm et al., 226 Or. 27, 38, 359 P.2d 413 (1961). See Jordan v. MVD, 308 Or. 433, 438, 781 P.2d 1203 (1989) (recognizing "the strong and enduring policy that public records and governmental activities be open to the public").[4]
Reading the text and context of ORS 192.410(3) in the light of the legislative purpose of the Public Records Law, I conclude that the legislature intended (or would have intended if it had considered the issue) the term "public body" to include an entity, like defendant, which is subordinate to a politically accountable public body, like the District. To hold otherwise would be to allow a politically accountable public body to delegate its statutory duties relating to the conduct of the public's business to a subordinate decision-making entity, like defendant, and thereby shield its records from public scrutiny, thus circumventing the strong legislative policy in favor of open government reflected by the Public Records Law.
For the foregoing reasons, I conclude that plaintiffs' complaint alleges facts sufficient to establish that defendant is a "public body" under ORS 192.410(3). Therefore, plaintiffs should be given an opportunity to prove that defendant is a "public body" under ORS 192.410(3).
In summary, I conclude that the trial court erred in granting defendant's motion to dismiss. I would affirm the decision of the Court of Appeals, reverse the judgment of the circuit court, and remand the case to the circuit court for further proceedings.
"[P]ublic knowledge of the considerations upon which governmental action is based is essential to the democratic process. The people must be able to `go beyond and behind' the decisions reached and be apprised of the `pros and cons' involved if they are to make sound judgments on questions of policy and to select their representatives intelligently." Note, Open Meeting Statutes: The Press Fights for the "Right to Know," 75 Harv.L.Rev. 1199, 1200-01 (1962) (footnotes omitted).
I respectfully dissent.
VAN HOOMISSEN, J., joins in this opinion.
NOTES
[1] COSA is a private, nonprofit corporation.
[2] In a "Progress Report" submitted to the school district by defendant, a copy of which was appended to the complaint, defendant summarized its understanding of its "charge" as follows:

"The Team will submit a report to the McKenzie School District which will:
"1. Determine whether McKenzie High School encourages in its students the development of respect for the individual differences of other students.
"2. Determine if ORS 339.420 has been appropriately administered. ORS 339.420 provides, `Attendance at religious instruction. Upon application of the parent or guardian of the child, or, if the child has attained the age of majority, upon application of the child, a child attending the public school may be excused from school for periods not exceeding ... five hours in any week for secondary pupils to attend weekday schools giving instruction in religion.'
"3. Determine whether discipline guidelines, relating to denial of class time are appropriate and, if so, whether those guidelines have been administered appropriately.
"4. Determine whether the complaint process is easily accessible and fairly administered.
"5. Determine whether the District employment practices are fair and equitable and whether they are administered without regard to religion.
"6. Make any recommendations [the team] deems appropriate."
[3] Apparently, plaintiffs went to the Marion County District Attorney because COSA (and the fact-finding team that COSA appointed) is headquartered in Salem, and because ORS 192.460 provides that a petition to review a denial of the right to inspect a public record of a public body other than a state agency must be made to the "the district attorney of the county in which the public body is located."
[4] Before 1993, the definition of "public body" appeared at ORS 192.410(1). In 1993, however, the legislature reorganized ORS 192.410, and the definition of "public body" now appears in subsection (3). Or.Laws 1993, ch. 787, § 4. The text of the definition has not changed.
[5] The exceptions to ORS 192.420, which are set out in ORS 192.501 to 192.505, are not applicable to the present action in its current posture.
[6] The complaint does not allege that the school district, which is a public body, "prepared, owned, used or retained" the records of the team that are sought by plaintiffs. Insofar as the complaint alleges, the school district had access only to the team's report. That report plainly is a public record of a public body, and its disclosure is not at issue here.
[7] Defendant argues that it cannot be a "public body," because plaintiffs alleged in their complaint that defendant was an "independent task group" of COSA, which is a private, nonprofit corporation. Defendant contends that, as an "activity" of a private entity like COSA, defendant itself is also a private entity. The private status of COSA, or of defendant itself, however, is not necessarily dispositive of whether defendant can be characterized as a "public body" for purposes of the Inspection of Public Records Law.
[8] The NAMHC, or National Advisory Mental Health Council, was the official body statutorily authorized to make recommendations to NIMH regarding grant proposals. The NAMHC had created the IRGs to assist in the recommendation process.
[9] The foregoing list is not intended to be exclusive.

Any factor bearing on the character of the entity and the entity's relationship with government may be relevant in determining whether that entity is a "public body" subject to the Inspection of Public Records Law.
[10] The one fact in the complaint that suggests some involvement of the school district in defendant's operation is a statement appearing in defendant's "progress report" that an individual could request an interview with defendant by calling the "District office." That statement alone, however, is insufficient to support an inference that government had any significant involvement in defendant's operation.
[1] The quoted "charge" and "procedures" appear in a "Progress Report" issued by defendant to the McKenzie District school board. The report was appended to the complaint and incorporated by reference.
[2] The definition of ORS 192.410(5) has been read on a prior occasion to provide this three-category approach to "public body." See State ex rel. Frohnmayer v. Oregon State Bar, 307 Or. 304, 312-13, 767 P.2d 893 (1989) (Carson, J., dissenting) (recognizing categorization in ORS 192.410).
[3] ORS 332.105(1) provides in part:

"The general duties of district school boards are: "* * * * *
"(b) To perform such other duties as the wants of the district may from time to time demand."
[4] ORS 192.001 expresses the policy underlying the Public Records Law. ORS 192.001 provides in part:

"(1) The Legislative Assembly finds that: "* * * * *
"(b) The interest and concern of citizens in public records recognizes no jurisdictional boundaries, and extends to such records wherever they may be found in Oregon."
ORS 192.001(2) states that the Public Records Law was enacted in part to "meet the needs of [Oregon] citizens, in so far as the records affect the administration of government, legal rights and responsibilities, and the accumulation of information of value for research purposes of all kinds * * *."
The Public Records Law serves many other purposes. It is designed to ensure accountability, an informed electorate, and the sovereignty of the people, by acknowledging the principle that public entities were created as instruments of government and should not have the power to decide what is good for the public to know. It makes the government responsive to the wishes of the public and thereby increases the quantum of information on which governmental decisions may be predicated; it promotes confidence in the governmental decision-making process by discouraging secrecy and the appearance of ineptness or corruption; it increases the flow of information so that the media is not forced to rely on biased "leaks," but can report events more accurately to absent members of the public; and it provides a basis on which voters may make better informed policy analyses and more intelligent selections of their representatives.