OPINION OF THE COURT
Stanley Parness, J.
Petitioner Consolidated Edison (Con Edison), by CPLR article 78, seeks to compel respondents to comply with petitioner’s *971 request to examine certain documents in respondent’s possession relating to Northumberland Insurance Company (Northumberland), this pursuant to the Freedom of Information Law (FOIL) (Public Officers Law § 84 et seq.). Respondents now move to dismiss the petition.
In April 1984 Con Edison sustained certain losses which it contends were covered by Northumberland. In 1985 Northumberland U.S., a New York licensed carrier, became insolvent and was placed in liquidation pursuant to article 74 of the Insurance Law.
Article 74 provides for a property casualty insurance fund to be maintained to pay claims upon policies insuring New York risks which are unpaid because of an insurer’s insolvency. Upon the application to the Supreme Court, the Superintendent is appointed as liquidator of the insolvent carrier (Insurance Law §§ 7404, 7417). The Liquidation Bureau has been designated as the entity which actually carries out the liquidation, handles claims, etc.
Con Edison made claim for its losses to the Liquidation Bureau which rejected same asserting that the policy covering petitioner was . not with the New York licensed Northumberland U.S. but with its Canadian parent company, Northumberland General Insurance Company (Northumberland Canada). The latter, not being licensed in New York, is not covered by the fund.
Con Edison then served a FOIL request in which it sought to inspect all documents in the possession of respondent which relate either specifically to its claim, e.g., reasons for rejection, investigatory reports, etc., or generally to the manner in which all claims relating to Northumberland are handled by the fund including documents relating to the corporate structure of the two Northumberland entities. The request was served upon the Insurance Department and not upon the Liquidation Bureau. The Department produced some documents. Others were refused upon the ground that they are in the possession of the Liquidation Bureau and are not covered by FOIL.
Under Freedom of Information Law § 87 (2) “[e]ach agency shall * * * make available for public inspection and copying all records” except records specifically exempted by FOIL.
As defined by FOIL the term agency means “any state or municipal department, board, bureau * * * or other governmental entity performing a governmental or proprietary func *972 tion for the state * * * except the judiciary or the state legislature.” (Public Officers Law § 86 [3].)
Where applicable FOIL relief may be had regardless of the availability of discovery through some other means. Thus, the fact that petitioner may obtain similar disclosure under the CPLR, in any plenary action it may bring against the fund on its claim, does not preclude it from seeking FOIL relief, if warranted. (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75.)
Respondents’ resistance to FOIL applicability in this case is, however, grounded in the following assertions.
1. That the Liquidation Bureau is not an "agency” of the State or State department and as such is not subject to FOIL.
2. That the Superintendent of Insurance and the Liquidation Bureau are acting in a "judicial capacity” with respect to liquidation of Northumberland and thus fall within the judiciary exception to FOIL.
3. That certain documents submitted with the Northumberland application are exempt from disclosure pursuant to the Insurance Law.
The initial inquiry to be made, therefore, is whether the Liquidation Bureau is an "agency” or "bureau” of the State or department thereof and is thus subject to FOIL.
To support the position that it is, petitioner cites several factors as indicative of that fact. To wit, the official letterhead of the Liquidation Bureau reads State of New York, Insurance Department Liquidation Bureau and bears the seal of the State of New York; in addition the Bureau is listed in the "official” State of New York Red Book in the "Insurance Department” section. Petitioner also argues that the Bureau performs a governmental function in implementing the mandate given by the Legislature to the Superintendent of Insurance to prevent wasting of assets of insolvent insurance companies.
In essence, petitioner’s argument is that liquidation of insolvent insurers has been taken by the Legislature from private receivership and been given to the Insurance Department, a State agency. (Citing Matter of Knickbocker Life Ins. Co., 199 App Div 503, 504.)
Respondents, however, contend that in its role as liquidator, the Liquidation Bureau performs a private function. It asserts that it has simply assumed the historical function held by private individuals as receivers.
*973 Essentially, the Bureau claims that it merely takes over the assets of the company but that they in fact remain "private” and its sole function is to "run” the company as a liquidator. To bolster its claim that it is not an agent or bureau of the State, the Bureau points to the following facts:
1. The Bureau pays Federal and State and city taxes on each insurer it administers including corporate sales and occupancy taxes and files a Federal return. A State entity would be exempt from taxes.
2. Where an insurer in liquidation has a parent company, that parent continues to file a consolidated tax return with the insolvent company thus indicating that the insolvent continues to retain its "private status” when taken over by the Bureau.
3. The Bureau continues to employ officers and employees of the insolvent insurer who remain non-State employees. Indeed, it has been held that these employees, unlike other State employees, are covered by State Employment Insurance. (Matter of Kinney, 257 App Div 496, affd 281 NY 840.)
4. The Bureau is not represented, as a State agency would be, by the Attorney-General but retains private counsel.
5. The Bureau is not included in the general budget of the State Insurance Department.
6. The assets of the insolvent are retained separate and apart from those of the State treasury and are held in fiduciary accounts solely for the benefit of policyholder, and creditors.
7. The Superintendent as liquidator and the Liquidation Bureau have no governmental immunity. Judgments against them are not obligations of the State. (Matter of Bean v Stoddard, 207 App Div 276, affd 238 NY 618; New York State Thruway Auth. v Hurd, 29 AD2d 157.)
8. The governmental immunity which requires that suits against State agencies be brought in the Court of Claims does not apply to litigation involving the Liquidation Bureau. All court proceedings are brought in the Supreme Court.
9. The Liquidation Bureau, unlike a governmental agency, is not covered by the State for malpractice but must obtain its own errors and omissions coverage.
Indeed, all of these circumstances cited by respondents are inconsistent with the contention that the Superintendent as liquidator or his Bureau is an "agency” of the State.
*974 To best understand the status of the Superintendent, as liquidator, consideration of the historical context within which his designation as such arose would be appropriate.
Historically, insolvent insurers, as with other insolvents, were placed into receivership by order of the court and private receivers were appointed to administer the insolvent’s estate. Finding the system of private receiverships to be wasteful, if not subject to corruption, the Legislature in 1909 designated the Superintendent of Insurance to be the receiver in all cases involving insolvent insurers. The purpose of the law “was to provide for an economical liquidation of insolvent insurance companies through the agency of a State department, and to prevent the waste of assets which therefore had been occasioned through receiverships” (Matter of Knickerbocker Life Ins. Co., supra, at 504; Matter of Casualty Co. [Rubin], 244 NY 443). Petitioner, Con Edison, contends that this legislative designation of the Superintendent, a public official, as receiver-liquidator of insolvent companies, implicates State action. This, Con Edison contends, is similar to the State takeover by public authorities of the subways and buses.
However, there is an essential difference between a State or municipal operating authority and the Liquidation Bureau. Such authorities operate these services for the benefit of the general public while liquidation is for the protection of private policyholders or creditors. Further, the assets of the private buses or subways become the property of the authority to be used for the public, while, as stated, the assets of the insolvent carrier are used to pay claims arising out of private insurance contracts or those of private creditors.
There is no case in New York which has analyzed or defined the term “agency” as employed in FOIL. However, several Federal cases have dealt with this issue under a comparable Federal FOIL statute. These suggest several factors to be considered in determining an entity’s "agency” status. These are:
1. Whether the entity is performing a governmental function.
2. Presence of substantial governmental control over its day-to-day operation.
3. Nature of the government’s financial involvement with the entity.
4. Status of its employees (Forsham v Harris, 445 US 169, 174-180 [1980]; Railway Labor Executives’ Assn. v Consoli *975 dated Rail Corp., 580 F Supp 777; Washington Research Project v Department of Health, Educ. & Welfare, 504 F2d 238, 248, cert denied 421 US 963; Lombardo v Handler, 397 F Supp 792, affd 546 F2d 1043).
Applying these factors to the instant case we find that the Insurance Department or its Superintendent exercises no detailed or extensive day-to-day supervision of the Liquidation Bureau. Further the Superintendent, as liquidator, must account and is responsible only to the court which appoints him. The process of liquidation is not subject to administrative review. The State has no financial interest in the insolvent insurer whose assets in liquidation remain separate from the State treasury.
In sum, the Bureau has none of the attributes which are ordinarily associated with a State agency or bureau.
Further, in construing the meaning of the term "agency” under FOIL, it must be assumed that the Legislature intended it to be given its commonly accepted meaning, i.e., an entity which acts on behalf of the State to carry out some public benefit. The Bureau does not serve such a general purpose. It functions independently, administratively and financially independent of the State. Its only identifiable connection with the State is the fact that a State public official, the Superintendent of Insurance, rather than a private receiver, is authorized to take control of the assets of the insolvent. Once he does so and its assets come under the control of the Bureau it is for all practical purposes the same as the liquidation of any private corporation by a receiver.
Accordingly, I find that the Superintendent, as liquidator, or the Liquidation Bureau is not an "agency” of the State for FOIL purposes.
As an alternate argument in opposition to this FOIL application, respondents contend that the Superintendent acts in a "judicial capacity” as a liquidator and is thus specifically exempted from FOIL under the statute’s judicial exemption (Public Officers Law § 86 [3]). This makes FOIL applicable to any State agency which is defined as "any state or municipal department * * * except the judiciary or the state legislature. ” (Emphasis supplied.) Under Public Officers Law § 86 (1) " 'Judiciary’ means the courts of the state”.
Respondents’ contention is that the Superintendent and the Bureau act in the traditional role of a "receiver” and as such he is an officer of the court and is not a "public officer”. *976 (Mechanics Lbr. Co. v Cohen, 173 Misc 605, affd 260 App Div 863.) Thus the property received as liquidator-receiver is held by him in "custodia legis”, i.e., under control of the court. (In re Studio No. 54 Disco, 21 Bankr 308, 313, n 7 [ED NY 1982]; Atlantic Trust Co. v Chapman, 208 US 360; Copeland v Salomon, 56 NY2d 222.) Petitioners, however, assert that the Superintendent is not an officer of the court citing Matter of Lawyers Mtge. Co. (293 NY 159). In that case the court held that the Superintendent as liquidator acts "as a statutory receiver, — not as a receiver for the court” since he derives his appointment from the Governor and Legislature and his authority from the statute. (Supra, at 162.)
That case, however, should be interpreted within the context of the facts presented. There, the court was asked to compel the Superintendent-liquidator to approve a certain plan for reorganization of the insolvent. The lower court concluded that while it could not compel acceptance of the plan, it had the right of veto of any other actions of the Superintendent. In rejecting the power of the court to veto discretionary powers of the liquidator, the decision appears to uphold the Legislature’s intent to vest in the Superintendent the primary right to make decisions concerning the disposition of assets of the insolvent.
However, though the Court of Appeals in Lawyers Mtge. Co. (supra) limited to some degree the court’s power over decisions made by the Superintendent as liquidator, it did not conclude that he was not as any receiver would be, subject to court supervision.
Indeed, subsequent cases reaffirm the fact that as a receiver, albeit a statutory one, the Superintendent-liquidator remains subject to court control of over-all major decisions in liquidation. In Superintendent v Banker’s Life & Cas. Co. (401 F Supp 640, 648 [SD NY 1975]) the court stated that the Superintendent does not have unfettered "discretion over the administration of the [assets] of the insolvent * * * but that his acts are measurably subject to the direction, supervision, and control of the court entering the order of liquidation.” (See also, Tolfree v New York Tit. & Mtge. Co., 72 F2d 702 [in which the court held that when the Superintendent by court order took possession of property of the insolvent he "became in effect a receiver under the supervision of the state court and its property * * * (was) in custodia legis.”]) Indeed, Supreme Court supervision and approval is required at each stage of liquidation.
*977 Under article 74 of the Insurance Law a separate court order is needed to authorize the Superintendent to move against an insolvent company. All major decisions made by the Liquidation Bureau require court order. Where there is a disputed claim, each claimant is entitled to a hearing. The hearing is held before a Referee appointed not by the agency but by the Supreme Court. After such hearing, each Referee’s decision must be approved (or may be disapproved) by the court. Appeals from the court’s decision go to the Appellate Division (and not through some administrative appellate procedure).
All these controls exercised by the court, which are traditionally associated with court-appointed receiverships, are further affirmed and codified in the Insurance Law. Sections 7411, 7412 and 7434 specifically preclude the Superintendent from disbursing any of the assets of the insolvent without court approval. That the Superintendent, as liquidator, is to be treated as a receiver of the assets of a private corporation rather than as a public official is demonstrated by the fact that the court may require him to post a bond (Insurance Law § 7409).
Clearly the Superintendent has no real authority to act independently of the court. It would appear that for whatever its import, the 1944 decision in Lawyers Mtge. Co. (supra), cited by Con Edison, has little precedential value in defining the present legal significance of the Superintendent-court relationship. The present operation of the Liquidation Bureau mirrors completely the traditional role of the court-appointed receiver. In National Bondholders Corp. v Joyce (276 NY 921 [1937]) the court considered the power of the court to supervise the Superintendent’s actions stating: "The conduct of the liquidation is subject in all its phases to the supervision and control of the court, except in so far as the Legislature may have vested discretionary power in the Superintendent. Save for this, the court in its discretion, may veto the acts of the Superintendent as liquidator, and is vested with a discretion which may override that of the Superintendent. If the present action had been brought by the Superintendent, his conduct would have been subject to the supervision and discretion of the court, in accordance with the decisions of this court. In such an action the application of a stockholder to intervene would rest within the discretion of the court.”
The Legislature in creating an apparatus to deal with *978 insolvent insurers, did so utilizing the traditional concept of court receivership. Had it intended State control, it could have provided for complete State takeover of the insolvent and its assets, and complete agency processing of claims and liquidation subject only to article 78 review. Instead, it carefully provided for segregation of the insolvent’s assets, separation of administrator and processing of claims from State involvement. This, all to be subject to review not by the executive but by the judiciary.
I, therefore, conclude that the Superintendent as liquidator (and the Liquidation Bureau), as with any other court-appointed receiver, enjoys the judicial privilege recognized in section 86 (3) of the Public Officers Law (FOIL).
The fact that this court herein determines that the Liquidation Bureau or the Superintendent as liquidator is not subject to FOIL does not dispose of every item requested by Con Edison under FOIL. Several items requested (items 26-36) refer to documents filed by Northumberland U.S. with the Insurance Department pursuant to the Insurance Law. These the Superintendent would have received in the normal course of his duties as regulator of the insurance industry. Respondents, however, claim that these documents are “confidential” pursuant to section 1504 of the Insurance Law. In view of the defunct status of Northumberland, the reasons for such confidentiality no longer exist. Absent some other reason to exempt them from FOIL, which is not demonstrated herein, they remain subject to FOIL disclosure. (See, Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557.)
Similarly, those items requested by petitioner which seek to examine license applications filed by various entities with the Insurance Department are "records” kept by the Superintendent in his regulatory capacity and are available to petitioner under FOIL.
Further, the fact that these records pertaining to licensing or registration of Northumberland-related entities are now held by the Superintendent, as liquidator, does not change their character as Insurance Department records and as such they remain subject to FOIL.
It should be noted that whether or not any of the items requested by petitioner may be additionally exempt from FOIL because of specific statutory exemption has not been examined by the court. If such exemption exists, then the burden is upon the petitioner to “ ’articulate particularized *979 and specific justification’, and to establish that 'the material requested falls squarely within the ambit of [the] statutory exemptions’ ” (Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 83, supra). This respondents have failed to do.
Accordingly, respondents’ motion to dismiss is granted solely to the extent indicated.