Stephen J. Immett, Hogan & Hartson, Thomas F. O'Neil III, Baltimore, Md., for plaintiff.

Joseph F. Roda, Joseph F. Roda, P.C., Lancaster, Pa., for defendant.

## FERRANTI INTERNATIONAL PLC

v.

### William A. CLARK.

### Civ. A. No. 90–3727.

United States District Court, E.D. Pennsylvania.

April 4, 1991.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiff sues for breach of fiduciary duty and professional malpractice and to rescind a $2.75 million employee "settlement and release" agreement, which the complaint alleges was obtained by extortion. Defendant William A. Clark's motion to disqualify the firm of Hogan & Hartson from representing plaintiff Ferranti International plc in this action will be denied for the following reasons:

1. An attorney-client relationship, express or implied, did not exist between Hogan & Hartson and William A. Clark when he was Ferranti International, Inc.'s vice president and general counsel.[1] *See Connelly v. Wolf, Block, Schorr and Solis-Co-*

---

1. Ferranti International, Inc. is a subsidiary of plaintiff Ferranti International plc.

*hen,* 463 F.Supp. 914, 919 (E.D.Pa.1978); *Jack Eckerd Corp. v. Dart Group Corp.,* 621 F.Supp. 725, 731 (D.Del.1985). *Compare Committee on Professional Ethics & Grievances v. Johnson,* 447 F.2d 169, 174 (3d Cir.1971) ("An attorney-client relationship is one of agency and arises only when the parties have given their consent, either express or implied, to its formation") with *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978) (attorney-client relationship does not arise only in agency manner, but also where layperson submits confidential information to lawyer with reasonable belief that latter is former's attorney).

2. In July, 1986 defendant Clark, himself an attorney, retained Hogan & Hartson to represent plaintiff Ferranti International plc and its subsidiaries in regard to a government investigation of alleged wrongdoing on the part of their employees. He did so in his capacity as Ferranti International, Inc.'s vice president and general counsel. The need for representation was triggered by a federal grand jury subpoena served on plaintiff's subsidiary, the Marquardt Company. Thereafter, the investigation was widened with target letters and follow-up subpoenas to corporate employees of plaintiff and plaintiff's other subsidiaries.

3. Hogan & Hartson did not represent the corporations' employees. Hogan & Hartson attorneys repeatedly stated to the corporations' employees in defendant's presence that they should obtain separate counsel because of the potential conflict of interest between employer and employee. Defendant helped arrange for employees to be separately represented.

4. Any perception by defendant that he became a client or was a prospective client of Hogan & Hartson as to his personal legal matters was unreasonable and without foundation. Defendant's position as general counsel and corporate officer excluded this law firm from acting as his personal attorney because of the self-evident interest conflict. Given the circumstances, the personal matters discussed did not involve an attorney-client relationship.[2] *See, e.g., Westinghouse Electric Corp.,* 580 F.2d at 1320 ("The professional relationship does not arise where one consults an attorney in a capacity other than as an attorney").

5. The information given Hogan & Hartson by defendant regarding plaintiff, its subsidiaries and employees was communicated by him in his capacity as Ferranti International, Inc.'s vice president and general counsel. *See Matter of Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 125 (3d Cir.1986) ("[O]fficers ... do not have an attorney-client privilege with regard to communications made in their role as corporate officials"). Proof of defendant's knowledge of such information does not appear to require that a Hogan & Hartson attorney testify as a witness.

6. Until shortly before the present disqualification motion was filed, February 28, 1991, defendant's sole objection to Hogan & Hartson's representation of plaintiff in this action involved the possible calling of Hogan & Hartson attorneys as plaintiff's witnesses. That was first noted by defendant's counsel as a potential problem in September, 1990. If either party intends to call a Hogan & Hartson attorney as a witness, the court should be notified at least 60 days in advance of trial, and any issue thereby raised can be considered at that time.

7. Defendant's status as an attorney has contradictory facets. He selected Hogan & Hartson to be plaintiff's counsel and subsequently worked with several of its attorneys in a confidential and apparently close relationship on behalf of plaintiff, the parent of his then employer. Having done so and formed such associations, he may understandably resent and find objectiona-

2. Examples set forth in defendant's affidavit are that he was advised "to leave the company in order to avoid being tainted" by the criminal investigation, that his salary was not commensurate with that of other corporate general counsel, and that the company "might attempt to make [him] a 'scapegoat' in order to avoid responsibility for themselves." Def. aff. ¶¶ 13, 16(a), 16(c).

**672**

ble the turn of events in which he is now being sued not only by the same law firm but also on behalf of the client that he brought to that firm. However, these personal and business considerations do not necessitate disqualification on legal-ethical grounds.

This is not a case in which a layperson might have perceived or reasonably misperceived that his corporate employer's attorney was also representing him. As a general counsel, defendant must have keenly appreciated the distinction between the corporation and its employees as well as the employees' need for separate counsel. *See, e.g., Evans v. Artek Systems Corp.*, 715 F.2d 788, 792 (2d Cir.1983) ("A 'corporate attorney'—whether an in-house lawyer or a law firm that serves as counsel to the company—owes a duty to act in accordance with the interests of the corporate entity itself. His client is the corporation. See ABA Code, Ethical Consideration 5–18; ABA Com. on Professional Ethics, Informal Opinion No. 1056 (1968)"). Defendant's assertion that the personal comments and observations exchanged between him and Hogan & Hartson attorneys were in contemplation of, or resulted in, a personal attorney-client relationship is factitious and unconvincing.

8. Although it became a Hogan & Hartson client through defendant, plaintiff has a cognizable interest in being permitted to continue to be represented by this firm. Moreover, disqualification—which is an increasingly frequent issue in the courts—may be the subject of tactical abuse. *See, e.g., Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757, 2763, 86 L.Ed.2d 340 (1985) ("[W]e share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel"). A party's choice of counsel should be set aside only where the circumstances legally require doing so. *See, e.g., United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980) ("[T]he court should disqualify an attorney only when it determines, on the facts of a particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule").

Under the Rules of Professional Conduct and the cases, there is no legal basis on which to disqualify Hogan & Hartson. An evidentiary hearing is unnecessary.