KENTUCKY CENTRAL LIFE INSURANCE COMPANY, By and Through Rehabilitator Don W. STEPHENS; and Don W. Stephens, Commissioner of the Kentucky Department of Insurance, Appellants,

v.

PARK BROADCASTING OF KENTUCKY, INC., d/b/a NewsChannel 36, WTVQ–TV, Lexington, Kentucky, Appellee.

Nos. 94–CA–002202–MR, 94–CA–002212–MR and 94–CA–002394–MR.

Court of Appeals of Kentucky.

Jan. 12, 1996.

J. Clarke Keller (briefed), Lloyd C. Chatfield, II, Lexington, Robin Gwinn (argued), Frankfort, for Appellants.

Foster Ockerman, Jr. and Duane F. Osborne (briefed), Lexington, Foster Ockerman, Jr. (argued), Lexington, for Appellee.

Before DYCHE, EMBERTON and GUDGEL, JJ.

EMBERTON, Judge.

This is an appeal from the Franklin Circuit Court's order of August 15, 1994, which dismissed an appeal from an adverse open records decision, 93–ORD–113, rendered Octo-

ber 7, 1993.[1] The issue presented is one of first impression in the Commonwealth; namely, whether an insurance company, undergoing rehabilitation pursuant to the insurance code of Kentucky, and its court-appointed rehabilitator are public agencies whose records are subject to disclosure pursuant to Kentucky's Open Records Act.

The Attorney General concluded certain requested information constituted public records for purposes of the Kentucky Open Records Act and directed the Commissioner of the Department of Insurance to release it. The circuit court, in agreement with the Attorney General, found Commissioner Don W. Stephens, while functioning as rehabilitator of Kentucky Central Life Insurance Company, is subject to the Open Records Act. We conclude Stephens, in his capacity as insurance commissioner and in his capacity as court-appointed rehabilitator of Kentucky Central, occupies two separate and legally distinct positions. In our opinion, neither the rehabilitator, nor Kentucky Central, is a "public agency" within the purview of the Act. The information sought was not subject to disclosure as a "public record" by way of the open records request to the insurance commissioner. We therefore reverse.

On February 12, 1993, the Franklin Circuit Court entered an order, pursuant to Ky.Rev. Stat. (KRS) 304.33–140, directing rehabilitation of Kentucky Central. In accordance with KRS 304.33–150, Stephens, the Commissioner of the Kentucky Department of Insurance, was appointed rehabilitator.

As mandated, the rehabilitator took possession of the assets of the insurer for the purpose of administering them under the orders of the court. On July 29, 1993, Bob Hensley, a reporter and employee of Park Broadcasting of Kentucky, Inc., made a request to the insurance commissioner for information concerning the identities of the corporations and individuals submitting bids for certain assets of Kentucky Central and its subsidiaries. The request was denied by the Department based upon the following reasons:

1. The requested information does not fall into the definition of "public record" as contained in KRS 61.870(2) inasmuch as the information is not related to "functions, activities, programs, or operations funded by state or local authority." Kentucky Central Insurance Company is not funded by state or local authority and therefore the records are not public.

2. The information, if available to the Commissioner, would be available only as a result of his being appointed Rehabilitator. A Rehabilitator is not defined as a "public agency" under KRS 61.870(1) and therefore any information he might have is not subject to revelation by the Department of Insurance.

3. The information, if a public record, is excepted from disclosure pursuant to KRS 61.878(1)(h) because it is preliminary correspondence with private individuals. The bidding process is presently in a preliminary stage and is excepted from disclosure.

4. It is the duty of the Commissioner pursuant to KRS 304.33–160(2) to take such action as he deems necessary or appropriate to revitalize the insurer. The premature revelation of this information would jeopardize this statutory mandate.

Hensley appealed the decision of the Department to the Office of the Attorney General. The OAG, recognizing that Stephens serves dual roles as rehabilitator and commissioner, concluded that the statutes fail to clearly delineate the roles, and that Stephens' appointment as rehabilitator was a direct consequence of his position as the Commissioner of Insurance. In reversing

---

1. On September 14, 1994, the Franklin Circuit Court denied a motion to vacate or set aside its August 15, 1994, order on the basis that the actual controversy between the parties became moot prior to its entry. The court reasoned "the dispute between the Commissioner of Insurance and the Respondents is one which is capable of repetition. Such disputes will continually evade review if the information is leaked or obtained in some manner other than directly from the Commissioner of Insurance, as occurred in this instance when Respondents learned of the information sought through court records rather than as a result of Respondents' open records request to the Commissioner.... [W]e will not vacate or set aside the order because the issue presented ... is capable of repetition and also capable of evading review."

the decision of the Department, the Attorney General reasoned:

> Rehabilitator Stephens cannot completely disassociate himself from Commissioner Stephens.... There can be little doubt that Commissioner Stephens is intimately involved in the bidding process ... and has therefore "used" or at one time "possessed" the bidding documents which disclose the names of the bidders. While those documents may not be housed at the Department of Insurance ... they are public records of a public agency, to wit, the Commissioner of the Kentucky Department of Insurance.

The Department appealed the decision of the Attorney General to the Franklin Circuit Court, and in reviewing the matter *de novo*,[2] the circuit court determined that Commissioner Stephens and Rehabilitator Stephens are one and the same and that the legislature used the terms "rehabilitator" and "commissioner" synonymously and interchangeably. Thus, the circuit court concluded that Commissioner Stephens, acting in his capacity as rehabilitator of Kentucky Central, is a "public agency," and it therefore follows that the records sought are "public records." The circuit court further rejected theories that the records were nevertheless exempt from disclosure pursuant to KRS 61.878(1)(h); 61.878(1)(k) and 26A.200(1). We disagree.

■ The appeals challenge the breadth of the decision inasmuch as the circuit court determined the rehabilitator and the commissioner are, for all intents and purposes, one and the same. The commissioner urges us to recognize the competing interests he must consider in his dual roles and that broad disclosure as contemplated by the Open Records Act could inhibit the rehabilitation process. The rehabilitator and Kentucky Central urge that the rehabilitator is not a public agency as defined by the statutes, and that records utilized in his capacity as such remain the private records of a private company subject, in this instance, to the exclusive jurisdiction of the court. We believe such argument is well taken.

In our view, the Insurance Code creates a court-appointed position of rehabilitator that is legally distinguishable from the office of commissioner. While it is the commissioner who is the statutorily designated appointee who must serve as the rehabilitator of an insurance company, it does not follow that the two positions are one entity for purposes of the Open Records Act. To the contrary, the fact that the code mandates a court order appointing the commissioner to serve as rehabilitator suggests the legislature contemplated a separate office of rehabilitator.

In fact, a review of the applicable statutes reveals that the legislature definitely and carefully utilized the terms "rehabilitator" and "commissioner" effectively delineating the differences in their functions, duties and powers with respect to the rehabilitation of insurance companies. The terms are not used interchangeably, nor are they used synonymously, with one another. Pursuant to KRS 304.33–140, the "commissioner" is granted the necessary power to initiate the rehabilitation process, and is granted authority to hire subordinate officers to assist in the rehabilitation. The "commissioner" is also charged with fixing the compensation, subject to court approval, to be paid such individuals. All compensation and expenses are to be paid by the insurer. The "commissioner" may advance costs from the Department when the funds and liquid assets of the insurer are insufficient. However, such advanced costs are to be repaid with the insurer's first available money. KRS 304.33–160(1). Significantly, all these provisions deal only with the organizational aspects of the rehabilitation process and are, therefore, appropriately vested in the "commissioner" and the Department of Insurance.

Conversely, in all matters of the actual rehabilitation, the statute, without exception, refers to the "rehabilitator." The stated purpose of the Insurers Rehabilitation and Liquidation Law (Rehabilitation Law) is set forth at KRS 304.33–010(4) and provides in pertinent part: "[t]he purpose ... is the protection of the interests of insureds, creditors, and the public generally, *with mini-*

---

**2.** Ky.Rev.Stat. (KRS) 61.880(5)(a).

*mum interference with the normal preroga-tive of proprietors...."* (Emphasis added).

KRS 304.33–040 provides in pertinent part:

(3) Exclusiveness of proceedings.

(a) The court shall have exclusive juris-diction to entertain, hear, or determine all matters in any way relating to any delin-quency proceeding under this subtitle, [Subtitle 33. Insurers Rehabilitation and Liquidation Law] including, but not limited to, all disputes involving purported assets of the insurer.

Once the court has ordered rehabilitation and appointed the rehabilitator, and the or-ganizational task of appointing special depu-ties and hiring necessary support staff is completed, it is solely the "rehabilitator" in whom the legislature vests power and au-thority to take action he deems "necessary and appropriate to reform or revitalize the insurer." *See* KRS 304.33–160(2), *et seq.* KRS 304.33–165 establishes the manner, time-frame and procedure to be followed by the "rehabilitator" in appearing and making known his final recommendations. KRS 304.33–150 provides that the appointed "re-habilitator" forthwith take possession of the assets of the insurer and administer them "under the orders of the court." Orders of rehabilitation are also subject to the follow-ing provision:

KRS 304.33–150(2). Any order issued un-der this section *shall require accountings to the court by the rehabilitator.* Account-ings shall be at such intervals as the court specifies in its order.... Each accounting shall include a report concerning the reha-bilitator's opinion as to the likelihood that a plan under KRS 304.33–160(5) will be prepared by the rehabilitator and the time-table for doing so. (Emphasis added).

Appellants argue that if the legislature had intended nothing more than a superfluous title for the Commissioner of the Department of Insurance in enacting the rehabilitation statutes, there would be no need to create a special office of rehabilitator who is subject to court supervision. We agree that a failure to recognize the legal distinctions between the two (as evidenced in the comprehensive statutory scheme) would essentially render much of the act a nullity.

In the absence of Kentucky statutory or common law on the issue, the circuit court was urged by the appellants, as are we, to adopt the reasoning set forth in *Consolidated Edison Company of New York, Inc. v. Insur-ance Department of the State of New York,* 140 Misc.2d 969, 532 N.Y.S.2d 186 (N.Y.Sup. Ct.1988). The circuit court declined to adopt the reasoning set forth in that case based upon what it perceived to be a distinction between the purpose of Kentucky's Insurer's Rehabilitation and Liquidation Law and New York's liquidation laws. We conclude such distinction, if any, does not render the case inapposite.

The *Consolidated Edison* court reasoned that the legislature in creating an apparatus to deal with insolvent insurers, did so utiliz-ing the traditional concept of court receiver-ship. Furthermore, the court reasoned, the liquidation process is subject in all its phases to the supervision and control of the court. Had the legislature intended state control it could have provided for complete govern-ment takeover of the insolvent and its assets. Instead, similar to Kentucky, it has designed a scheme where the superintendent of the New York Insurance Department is appoint-ed by the court to serve as liquidator and, in concert with the Liquidation Bureau, carries out the liquidation process. The superinten-dent, as liquidator, must account to, and is responsible to, the court which appoints him. The process is not subject to administrative review. Ultimately, the superintendent in his capacity as liquidator, was deemed an entity separate and apart from the role occu-pied as regulator of the insurance depart-ment. Further, it was determined that the superintendent as liquidator, was not an "agency" of the State as defined in New York's Freedom of Information Law (FOIL). Accordingly, "records" of the superintendent in his capacity as "liquidator" were not avail-able through a FOIL request served upon the Insurance Department because of the "judicial" exception contained in the FOIL.

We recognize that the conclusion reached in *Consolidated Edison* turned on an inter-pretation of New York's FOIL, which con-tained an exception for the judiciary. Never-

theless, inasmuch as it addresses the distinct and separate capacities of the superintendent as head of the Insurance Department and the superintendent in his capacity as "liquidator" of a private insurance company, we find the reasoning persuasive.

In accordance with the analysis in *Consolidated Edison,* and our review of the comprehensive legislative scheme in Kentucky, we conclude that the "commissioner" and the "rehabilitator" are not one and the same entity.

■ The more difficult task however, is that of determining whether the rehabilitator is a "public agency" within the meaning of Kentucky's Open Records Act. KRS 61.870 provides:

(1) "Public agency" means:

(a) Every state or local government officer;

(b) Every state or local government department, division, bureau, board, commission, and authority;

(c) Every state or local legislative board, commission, committee, and officer;

(d) Every county and city governing body, council, school district board, special district board, and municipal corporation;

(e) Every state or local court or judicial agency;

(f) Every state or local government agency, including the policy-making board of an institution of education, created by or pursuant to state or local statute, executive order, ordinance, resolution, or other legislative act;

(g) Any body created by state or local authority in any branch of government;

(h) Any body which derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds;

(i) Any entity where the majority of its governing body is appointed by a public agency as defined in paragraph (a), (b), (c), (d), (e), (f), (g), (h), (j), or (k) of this subsection; by a member or employee of such a public agency; or by any combination thereof;

(j) Any board, commission, committee, subcommittee, ad hoc committee, advisory committee, council, or agency, except for a committee of a hospital medical staff, established, created, and controlled by a public agency as defined in paragraph (a), (b), (c), (d), (e), (f), (g), (h), (i), or (k) of this subsection; and

(k) Any interagency body of two (2) or more public agencies where each public agency is defined in paragraph (a), (b), (c), (d), (e), (f), (g), (h), (i), or (j) of this subsection.

(2) "Public record" means all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency. . . .

The appellee argues that the rehabilitator qualifies as a "public agency" under the definition set forth in KRS 61.870(1)(a), (e) and (i). The trial court found the commissioner and rehabilitator were one and the same and fell within the purview of subsection (a) alleviating the necessity to analyze the scope of subsections (e) and (i). Because it is our opinion that the commissioner as "rehabilitator" occupies a legally separate role from that of his official capacity as regulator of the state's insurance department, we conclude the rehabilitator falls outside the purview of KRS 61.870(1)(a).

Under subsection (e) the Franklin Circuit Court is considered a "public agency." What must be determined is whether pursuant to subsection (i), the rehabilitator, by reason that he is appointed by the court, is likewise a public agency. We conclude he is not. The plain language utilized by the legislature reveals such was neither the intention, nor the effect of subsection (i). Had the legislature intended the language "any entity where the majority of its governing body is appointed by a public agency ..." to encompass individuals appointed by the court for the purpose of conducting the affairs of private companies it would have more clearly stated so.

We decline to afford such a broad interpretation to the language utilized in subsection

(i). In our opinion, in enacting subsection (i), the legislature purposefully references the "governing body" in an attempt to include within the definition of "public agency" those bodies that are created to perform governmental functions. To conclude otherwise would lead to the absurd result that personal representatives, estate administrators, executors, bankruptcy trustees, and other similar offices, simply by virtue of their appointments, are "public agencies" and all records possessed or used by them are subject to the Open Records Act.

*Consolidated Edison* sets out several factors, as suggested in various federal cases, to consider in analyzing an entity's "agency" status. These are:

1. Whether the entity is performing a governmental function.

2. Presence of substantial governmental control over its day to day operation.

3. Nature of the government's financial involvement with the entity.

4. Status of its employees. (Citations omitted).

*Id.* 532 N.Y.S.2d at 189. These factors, considered with other circumstances highlighted in the *Consolidated Edison* case,[3] when applied to the present case, suggest it would be inconsistent to conclude that the rehabilitator and Kentucky Central are public agencies. Clearly the rehabilitator is performing a traditionally non-governmental function, the primary purpose of which is to protect insureds and creditors. Kentucky Central remained financially responsible for all aspects of the rehabilitation process. Funds for rehabilitation are not part of the insurance department's general budget. The day-to-day operation of the insurer was conducted by and through the rehabilitator with little, if any, interference or control by the insurance department. Kentucky Central's assets were retained separate and apart from the state

treasury. Kentucky Central's employees maintained their status as such and were not placed on the state payroll. Neither the rehabilitator, nor Kentucky Central, enjoyed sovereign immunity. The rehabilitator and insurer were not represented by the attorney general but were required to retain private counsel.

Clearly, the rehabilitator was not functioning as a unit of government in his endeavors to rehabilitate Kentucky Central. Instead, he was the functional equivalent of a receiver of a private company in liquidation and reorganization charged with administering the company's affairs. For obvious reasons rehabilitation can, and in fact is designed to, benefit the public generally. However, its primary purpose is to protect and benefit insureds and creditors with a system calculated to provide expert assistance from those in the insurance field and through court supervision and approval. While he is appointed by the court, and is responsible to the court, we are convinced the rehabilitator is not a "governing body" as contemplated in KRS 61.870(1)(i). Accordingly, he is not a "public agency."

We conclude the "records" at issue are the private records of Kentucky Central. We have no doubt that the legislature did not intend to convert companies such as Kentucky Central into public agencies through the Rehabilitation Act. To hold that the rehabilitator, who essentially steps into the shoes of the directors, officers and managers of the insurance company, is a public agency effectively makes the company and all its records subject to the strictures of the Open Records Act. The company's records should not lose their private status simply because the rehabilitator has used, possessed, or has access to them. The rehabilitation statutes were designed to effectuate the process with "minimal interference with the normal pre-

---

**3.** The additional following factors were highlighted in *Consolidated Edison* as being inconsistent with a contention that New York's Insurance Department Superintendent in his capacity as liquidator is an "agency" of the state: (1) no exemption for the payment of federal, state and city taxes, including corporate sales and occupancy taxes for insurers being administered; (2) continued employment by the insurer of employ-

ees who remain non-state employees; (3) no representation, as would be a state agency, by the attorney general; (4) no inclusion in the general budget of the state insurance department; (5) assets of the insolvent are retained separate and apart from the state treasury; (6) liquidator has no governmental immunity; and (7) judgments against the liquidator are not obligations of the state.

rogative of proprietors...." Subjecting Kentucky Central's records to the broad disclosure contemplated under the Open Records Act would completely frustrate the purpose and intent of the law. The records that were made by, or generated for, Stephens' use in his capacity as rehabilitator are within the exclusive jurisdiction of the court and are not "public records" subject to the Open Records Act. *See* KRS 304.33–040; 304.33–150(2); and 26A.200.

The judgment of the circuit court is reversed.

All concur.