964 F.Supp. 230 (1997)
HEALTH MAINTENANCE ORGANIZATION ASSOCIATION OF KENTUCKY, INC., et al., Plaintiffs,
v.
George NICHOLS, III, in his official Capacity as Commissioner of the Kentucky Department of Insurance, Defendant.
Civil Action No. 97-24.
United States District Court, E.D. Kentucky.
May 30, 1997.
*231 John Armstrong West, Greenebaum, Doll & McDonald, P.L.L.C., Lexington, KY, Barbara Reid Hartung, Greenebaum, Doll & McDonald, Covington, KY, Robert N. Eccles, Karen M. Wahle, O'Melveny & Meyers, Washington, DC, for Plaintiffs.
Anna R. Gwinn, Kentucky Department of Insurance, Lexington, KY, Shaun T. Orme, Julie M. McPeak, Kentucky Department of Insurance, Frankfort, KY, for Defendant.

MEMORANDUM OPINION AND ORDER
HOOD, District Judge.
The present action arises out of the interplay between provisions of Kentucky's Insurance Code, KRS Chapter 304, regulating the rehabilitation and liquidation of insurance companies and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.
Before the Court is the motion of the defendant[1] to disqualify counsel for the plaintiffs.[2] [Record No. 9]. In addition to a supporting memorandum, the Commissioner has filed the affidavit of Suetta W. Dickenson and a copy of a letter from the Department of Insurance to plaintiffs' present counsel. [Record No. 10, Exhibits 1, 2]. The plaintiffs and their counsel, Greenebaum Doll & McDonald PLLC (the firm), have filed a memorandum in opposition along with the affidavits of Eric L. Ison and Barbara Reid Hartung. [Record No. 12].
*232 On May 28, 1997, before expiration of the reply time and in light of the Court's schedule, this matter came on for oral argument. In view of the affidavits and documents submitted and because the germane facts are undisputed, an evidentiary hearing is not necessary. General Mill Supply Co. v. SCA Services, Inc., 697 F.2d 704, 710 (6th Cir. 1982). Satisfied that all issues have been fully joined, the instant motion is deemed ripe for consideration.

FACTUAL BACKGROUND
The Commissioner files the instant motion claiming to be a former client of the firm and, further, claiming that the prior five-year representation involved issues substantially related to those in the action at bar. Contending that it has not extended its permission to the firm to represent its adversary in the instant proceedings, the Commissioner seeks disqualification of the firm pursuant to Kentucky Supreme Court Rule 3.130 which adopts Rules 1.9 and 1.10 of the 1983 Model Rules of Professional Conduct. Local Rule 3(a)(1) implicitly incorporates the ethical rules of the Commonwealth of Kentucky. Cf. Kitchen v. Aristech Chemical, 769 F.Supp. 254, 258 (S.D.Ohio 1991).
The alleged prior representation involved a self-funded multiple employer welfare arrangement (MEWA) known as the National Business Association Trust (NBAT). The firm was not, however, involved from the outset. In fact, the firm was not retained until October of 1991. As discussed below, the parties dispute the legal question of whether the Commissioner can be considered to have had an attorney-client relationship with the firm.
In 1989, the Department of Insurance became concerned with the solvency of NBAT and, in June of 1990, the Department sought an Order to liquidate[3] from the Franklin Circuit Court appointing then-Commissioner Elizabeth Wright as Liquidator for NBAT. Pursuant to Kentucky's insurance rehabilitation and liquidation statutes, the Commissioner of the Department of Insurance may be appointed to serve as Liquidator under KRS 304.33-200(1). Thus, the Commissioner wears two hats: Commissioner for the Department of Insurance and Liquidator for a domestic insurance company.
Before the Commissioner could secure appointment as Liquidator, however, NBAT filed a separate action in the United States District Court for the Western District of Kentucky, Louisville Division. NBAT essentially argued that the Department of Insurance had no authority to regulate it because the provisions of ERISA preempted application of the state insurance laws to MEWAs such as NBAT. In point of fact, the issue was framed by the Western District as follows:
whether and to what extent [ERISA] prevents the Commissioner of the Department of Insurance ... from exercising jurisdiction over the activities of National Business Association Trust....
National Business Ass'n v. Morgan, 770 F.Supp. 1169, 1170 (W.D.Ky.1991). The court went on to hold that a specific ERISA exemption provision, 29 U.S.C. § 1144(b)(6)(A)(ii), explicitly covered MEWAs and allowed for state regulation of MEWAs not inconsistent with title I of ERISA. Morgan, 770 F.Supp. at 1176.
Given the holding in the Morgan case, the Franklin Circuit Court was free to proceed with consideration of appointment of the Commissioner as Liquidator for NBAT. On June 20, 1991, it ordered such appointment. To be clear, to this point the firm had still not been retained and was never retained to represent the Liquidator in the liquidation proceedings.
Rather, in October of 1991, the firm was retained by the Liquidator to bring a separate action against the directors and officers of National Benefits Administrators, Inc. (NBA), the organization which acted as administrator for NBAT. Alleging fiduciary duty violations and the like, in March of 1992, the firm brought suit in Franklin Circuit Court with the Liquidator as the named party.
Despite the Morgan decision, the NBA defendants removed the matter to the United States District Court for the Eastern District *233 of Kentucky, Frankfort Division, alleging that the claims were preempted by ERISA. Rejecting the NBA defendants' interpretation of Morgan, the Court remanded the matter reiterating, "The Commissioner [as Liquidator] is permitted to pursue state law remedies against these defendants in state court, to the extent those remedies are not inconsistent with title I of ERISA." Moore v. National Benefit Administrators, Inc., Frankfort Civil Action No. 92-40 (October 20, 1992).
In yet another try to escape Morgan, the NBA defendants filed an action against the Liquidator pursuant to 42 U.S.C. § 1983 in the Western District. They met with the same fate, however, as the Western District court held fast to Morgan stating that it "established that NBAT is a MEWA and that ERISA does not preempt a state from regulating a self-insured MEWA, provided that the insurance laws applied are not inconsistent with ERISA." Roberts v. Moore, Louisville Civil Action No. 92-231 (January 8, 1993).
In both of the excursions to federal court on the ERISA preemption argument as applied to MEWAs, the firm represented, as the named party, the Commissioner as Liquidator. Given the duality of function of the Commissioner, and the possibility of administrative action against NBAT, in-house counsel for the Department of Insurance, Suetta Dickenson, worked with the firm as a way of, in the Commissioner's words, "making sure that the Liquidator lawsuits and the Department's administrative actions did not conflict." To this end, the firm and in-house counsel had communication on, again in the Commissioner's own words,
preemption issues of ERISA, grey areas in the federal and state insurance code, perceived vulnerabilities in the insurance regulations, strengths and weaknesses of the Liquidator's position in addressing specific ERISA claims, and the impact of certain discussed litigation strategies on regulating insurers.
[Record No. 10, Exhibit 1, Dickenson Affidavit, ¶ 4]. The Commissioner and in-house counsel claim that all of these discussions were regarded as privileged.
Concerned with the firm's concomitant representation of the Commissioner as Liquidator and against the Commissioner as Commissioner, the Department of Insurance wrote to the firm in November of 1995. [Record No. 10, Exhibit 2]. As evidenced by the letter, the firm was representing the HMO Association in an action against the Kentucky Health Purchasing Alliance. Although the Department of Insurance was not a named party, the firm was, in effect, going against a legal opinion written by the Department. Further, the Department provided assistance to the Alliance. In addition, in the course of that action, the firm subpoenaed Dickenson and put to her various questions concerning how the Department would interpret certain insurance provisions. The firm ceased representation of the Liquidator on August 19, 1996.
After the firm ceased all representation of the Commissioner as Liquidator, it filed the action at bar on behalf of the HMO Organization claiming, inter alia, that Kentucky's any willing provider (AWP) provisions are preempted by ERISA. [Record No. 1, Count I]. It is undisputed that the firm did not ask for or receive any sort of consent from the Commissioner to proceed against him. The Commissioner filed an answer and, shortly thereafter, filed the instant motion to disqualify.

STANDARD OF REVIEW
The governing Kentucky rule on former client conflict of interest provides as follows:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related similar matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
*234 SCR 3:130(1.9). The principles embodied in this rule have been distilled into a three-part test. Disqualification is in order if:
(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify;
(2) the subject matter of those relationships was/is substantially related; and
(3) the attorney acquired confidential information from the party seeking disqualification.
Dana Corp. v. Blue Cross & Blue Shield, 900 F.2d 882, 889 (6th Cir.1990) (citations omitted). The burden of showing the necessity of disqualification rests on the Department as the moving party. Duncan v. Merrill Lynch, Pierce, Fenner & Smith, 646 F.2d 1020, 1033 (5th Cir.1981).
The appropriate means of enforcement of these principles is by way of a motion to disqualify. Kitchen, 769 F.Supp. at 256 (citing Ex Parte Burr, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (Marshall, C.J.)). All of the other relief sought by the Commissioner, viz. dismissal of the present action and an Order enjoining the plaintiffs from further action on this suit, is de trop under these circumstances. After all, paramount to a plaintiff's interest in being represented by counsel of its own choosing is a plaintiff's right to access to the courts to assert its claim.

ANALYSIS

1. No Attorney-Client Relationship
In order for the Commissioner to establish a cognizable conflict of interest within the purview of SCR 3:130(1.9), he must initially show that an attorney-client relationship existed with the firm. The Court is persuaded no such relationship existed.
As a starting point, it must be noted that in another context the Department persuasively argued that the Commissioner and Rehabilitator (or Liquidator) are separate and distinct entities. Kentucky Central Life Ins. Co. v. Park Broadcasting of Kentucky, Inc., 913 S.W.2d 330 (Ky.Ct.App.1996). In Kentucky Central, the Kentucky Court of Appeals agreed with the Department that the comprehensive legislative scheme made it clear "that the `commissioner' and the `rehabilitator' are not one and the same entity." Kentucky Central, 913 S.W.2d at 334.
In addition, in assessing whether the rehabilitator could be considered a "public agency" within the meaning of Kentucky's Open Records Act, the court made it clear that the rehabilitator was performing a "traditionally non-governmental function, the primary purpose of which is to protect insureds and creditors." Kentucky Central, 913 S.W.2d at 335. Pointing to just how separate the Rehabilitator is from the Department, the court elaborated as follows:
Kentucky Central remained financially responsible for all aspects of the rehabilitation process. Funds for rehabilitation are not part of the insurance department's general budget. The day-today operation of the insurer was conducted by and through the rehabilitator with little, if any, interference or control by the insurance department. Kentucky Central's assets were retained separate and apart from the state treasury. Kentucky Central's employees maintained their status as such and were not placed on the state payroll. Neither the rehabilitator, nor Kentucky Central, enjoyed sovereign immunity. The rehabilitator and insurer were not represented by the attorney general but were required to retain private counsel.
Kentucky Central, 913 S.W.2d at 335.
Although the context of the Kentucky Central case is distinct, the holding and the rationale apply with equal force here. Clearly, the Commissioner may only claim to be a former client by virtue of its own dealings with the firm.
It is conceded that no written understanding of engagement was entered into between the Department and the firm. Conversely, it appears the Liquidator and the firm had a written understanding of engagement. Further, attorney's fees were paid not by the Department but rather by the Liquidator as administrative expenses out of the NBAT estate. [Record No. 14, Affidavit of Eric L. Ison, ¶ 4]. The Department's argument hinges on its contention that the coordination *235 between the Department and the firm resulted in a working relationship amounting to "privity" and that, therefore, an attorney-client relationship existed.
A mere cooperative working relationship such as the one here does not create an attorney-client relationship. Cf. Ferranti Intern., PLC v. Clark, 767 F.Supp. 670 (E.D.Pa. 1991). The firm's duty ran first and foremost to the Liquidator. The Liquidator, in turn, is to act in the best interest of the insureds and creditors, a traditionally non-governmental function. Kentucky Central, 913 S.W.2d at 335. The firm's working relationship with general counsel for the Department, which presumably performs traditionally governmental functions, was more in the nature of coordination by separate counsel for two clients whose interests tend to be the same. So long as the interests of the Liquidator and the Department were parallel, no problems arose. In this manner, then, the Department characterized the relationship as a "two-way street" inuring to the mutual benefit of the Department and the firm.
Yet, as in Ferranti, general counsel for the Department should have been aware of the specter of a conflict lurking in the wings. Presumably, general counsel was aware of the dual role of the Commissioner and the agreement of representation as between the Liquidator and the firm. Ferranti, 767 F.Supp. at 672 (this is not the sort of case in which a layperson might have reasonably believed that his corporate employer's attorney was also representing him). The Department proceeded in the face of this specter at its own risk.
Indeed, Dickenson's affidavit suggests her concern with the firm pulling in a different direction, the flip-side of cooperation: "I was particularly concerned that the Liquidator suits against the NBAT Board of Directors and officers not disadvantage the administrative actions to be taken against the agents of NBAT by the Department of Insurance." [Record No. 10, Exhibit 1, ¶ 3]. It is not exactly clear what the Department contemplated had a situation arisen in which the Liquidator's duties to the insureds and creditors came into conflict with the interests of the Department. Even so, given the structural pitfalls of the situation and the sophistication of general counsel for the Department, it was not reasonable to believe that the firm was acting as counsel for both the Liquidator and the Department as separate and distinct legal entities.[4]

2. No Substantial Relationship
Although not persuaded that an attorney-client relationship existed, the Court will nonetheless address the question of substantial relationship. In this respect, the Department contends that because the previous litigation and the instant action involve the issue of ERISA preemption, they are substantially related.
The Department characterizes the issue of ERISA preemption as one of the most highly litigated issues in this area of the law. Impliedly, then, there is a range of specific arguments, tied to specific statutes and entities, within ERISA peremption. The previous litigation involved MEWAs and a specific ERISA exemption for the same. Morgan, 770 F.Supp. at 1176. By contrast, the instant matter involves AWPs, not MEWAs, and there is no specific ERISA exemption for AWPs.
The rules of disqualification do not require disqualification for entire areas of the law. Comment 2 to SCR 3:130(1.9) provides:
a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client....
To require otherwise would fail to take account of the fact that attorneys routinely concentrate their practices in a particular area; they do not thereby become tainted in that entire area. The nature of the claims here, although facially related to those of the *236 previous litigation, are not substantially related. Duncan, 646 F.2d at 1029.

3. Confidential Information
The third factor, having obtained confidential information from the Department, leans heavily on the first two factors. Because no attorney-client relationship existed no protected confidential information was disclosed. Similarly, the unrelatedness of the two actions renders irrelevant any confidential information obtained. Regardless of these first two factors, a separate problem exists with respect to the public disclosure of the information.
At least in some measure, the position of the Department on "preemption issues of ERISA" was disclosed in the course of the Morgan litigation. As to "perceived vulnerabilities in the insurance regulations," it is not clear how this information is relevant to the instant matter. The information concerning "strengths and weaknesses of the Liquidator's position in addressing specific ERISA claims" is a matter between the Liquidator and the firm; it has no bearing on the claims against the Commissioner here. Moreover, it is somewhat difficult to discern how the purported confidential information of a public agency such as the Department, in the service of the general public, could constitute information not generally available to the public at large.

CONCLUSION
During the previous dealings between the firm, the Liquidator, and the Department, the distinction between the Liquidator and the Department became blurred. To the extent that general counsel for the Department did not observe the distinction between these entities for which it persuasively argued in Kentucky Central, based as it is on the comprehensive statutory framework, it may look to no one but itself. Any assumption on the part of the Department that the firm represented the Department as well as the Liquidator was not reasonable. It would therefore be unjust to deprive the plaintiffs of their choice of counsel.
Accordingly, the motion of the Department to disqualify counsel for the plaintiffs [Record No. 9] shall be denied.
IT IS SO ORDERED.
NOTES
[1] The defendant is George Nichols, III, in his Official Capacity as Commissioner of the Kentucky Department of Insurance, hereinafter referred to as the Commissioner or the Department.
[2] The plaintiffs are Health Maintenance Organization Association of Kentucky, Inc.; Advantage Care, Inc.; Aetna Health Plans of Ohio, Inc.; HMPK, Inc.; HPLAN, Inc.; and Humana Health Plan, Inc. These parties shall be collectively referred to as the plaintiffs or the HMO Association.
[3] KRS 304.33-190(1) and KRS 304.33-200.
[4] In addition, according to Hartung, a Greenebaum lawyer involved in the prior representation, the firm has represented clients in matters within the Department's regulatory authority since 1991 and continues to do so. [Record No. 15, Hartung Affidavit, ¶ 13].